ANTONIO MIGLIACCIO, Administrator of the Estate of FRANK MIGLIACCIO, v. SMITH FUEL COMPANY. W. J. SMITH, E. C. SMITH, Appellants.

**Negligence:** LEAVING HORSES UNTIED ON PUBLIC STREET.  To leave a team on a public street untied and unattended is *prima facie* evidence of negligence requiring a submission of that issue to the jury.

**Same:** PERSONAL INJURY: PLACE OF ACCIDENT: EVIDENCE.  The testimony of two witnesses that decedent was on a public street when killed by defendant's runaway team authorized a submission of the question as to where the accident occurred.

**Same:** NEW TRIAL: INADEQUACY OF VERDICT.  Inadequacy of the verdict is ground for a new trial.  In this action a verdict of less than fifty dollars for the death of a man thirty-six years of age, shown to be a steady worker and earning a dollar and eighty cents per day, was so inadequate as to warrant a new trial, even though it did not appear that he had accumulated any property.

**New trial:** MISCONDUCT OF JURORS: EVIDENCE.  Affidavits of jurors that they understood an appeal could not be taken if the verdict was less than a specified amount, and that to prevent an appeal they joined in such verdict, although contrary to the instructions of the court, relate to matters inhering in the verdict, and will not support a motion for a new trial on the ground of misconduct.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

TUESDAY, APRIL 4, 1911.

ACTION for damages, resulting in a verdict for plaintiff.  Upon his motion a new trial was ordered.  Defendants appeal.—*Affirmed.*

*Clark & Hutchinson,* for appellants.

*Bradshaw & McClain*, for appellee.

LADD, J.—The Smith Fuel Company is a copartnership composed of W. J. and E. C. Smith and was engaged as retail dealers in fuel. On the morning of April 17, 1907, one Holmes, employed by Malloy, drove his team in front of the Des Moines Clay Manufacturing Company's office, tied the lines about the brake handle, and went into its office, about eighty feet distant, for orders. Shortly afterwards H. Gunson, who was in the employment of the Smith Fuel Company and driving one of its teams, drove up behind Holmes' wagon, tied his lines to the brake handle, and went into the office for the same purpose. Neither team was hitched or restrained in any other way, and no one was left to watch them. While the men were gone, both teams ran away. The defendant's team ran over Frank Migliaccio, causing injuries from which he died on the same day. The jury returned a verdict of $49.50 as damages to his estate, and on plaintiff's motion a new trial was granted. The defendants contend that this was error, for that: (1) The evidence did not make out a case for the jury; (2) the verdict was not so inadequate as to justify the interference of the court; (3) that the alleged misconduct of the jury was such as inhered in the verdict. These propositions may be disposed of in the order mentioned.

I. The petition alleged that the team was "negligently left standing without being hitched or tied, and was negligently left in a dangerous place," and the defendants insist

1. NEGLIGENCE: leaving horses untied on public street.

that the evidence was insufficient to make out a *prima facie* case for the jury. Ordinarily, whether leaving a horse or team unguarded and unhitched is negligent, is a question for the jury to determine. The rule is well stated in *Griggs v. Fleckenstein*, 14 Minn. 81 (Gil. 62,

100 Am. Dec. 199): "The degree of care required of the plaintiff and those in charge of his horse at the time of the injury is that which would be exercised by a person of ordinary care and prudence under like circumstances. It can not be said that the fact of leaving the horse unhitched is in itself negligence. Whether it is negligence to leave a horse unhitched must depend upon the disposition of the horse; whether he was under the observation and control of some person all the time, and many other circumstances; and it is a question to be determined by the jury from the facts of the case." As announcing the same rule, see *Park v. O'Brien,* 23 Conn. 339; *Phillips v. Dewald,* 79 Ga. 732 (7 S. E. 151, 11 Am. St. Rep. 458); *Doyle v. Detroit Omnibus Co.,* 105 Mich. 195 (62 N. W. 1031); *Gorsuch v. Swan,* 109 Tenn. 36 (69 S. W. 1113, 97 Am. St. Rep. 836); *Haywood v. Hamm,* 77 Conn. 158 (58 Atl. 695); *Moulton v. Aldrich,* 28 Kan. 300; 1 Thompson, Neg., sections 1294, 1295; White's Sup., section 1294.

An examination of the decisions and textbooks indicates that by the great weight of authority the leaving of a horse or team unhitched and unguarded in a public street is at least *prima facie* evidence of negligence. Here the team 'was left standing in the yards of the Des Moines Clay Manufacturing Company, but these opened into the street, so that it was quite as dangerous to leave the team unhitched where it was, as though in the highway. The driver not only left his horses at a distance of eighty feet untied, but out of view. He must have known that, as it was about seven o'clock, the whistle was likely to blow, and must have appreciated that, as his team was behind that of Holmes, if one started, the other would be likely to do the same. Even though his team was gentle, we think the circumstances were such as to make out a *prima facie* case of negligence on the part of the defendant's employee requring the submission of the issue to the jury.

It is said that the collision did not take place in the

street. As Trincola testified that when hurt the decedent was right where Sixth Street connects with Seventh, and both he and Dafitto swore that decedent was on Sixth Street when run over, the issue as to whether the collision took place on the highway was, to say the least, for the jury.

**2. SAME:** personal injury: place of accident: evidence.

II. Appellants insist that the verdict was not so inadequate as to justify the granting of a new trial. The deceased was thirty-six years of age, and his expectancy of life according to the life tables, 30.32 years. He was a steady worker and earned $1.80 per day. A witness testified that he had returned to Italy to marry, and that he had heard he was married. He had accumulated no property. Even with such a record, we are not ready to say that the district court erred in treating the verdict as absurdly inadequate. No argument is necessary to prove its perverse character. It is hardly conceivable that a jury, having a proper conception of its duty and uninfluenced by considerations other than a desire of rightly discharging it, could have reached such a conclusion. There was no abuse of discretion by the trial court in granting a new trial on this ground alone. *Ward v. Marshalltown Light, Power & Railroad Co.,* 132 Iowa, 578. See *Witney v. Milwaukee,* 65 Wis. 409 (27 N. W. 39). The authority of the court to grant a new trial because of the inadequacy of the verdict was sufficiently vindicated in *Tathwell v. Cedar Rapids,* 122 Iowa, 50.

**3. SAME:** new trial: inadequacy of verdict.

III. One of the grounds of motion for a new trial was misconduct on the part of the jurors. Some of them made affidavits that they understood appeal to the Supreme Court could not be taken where the verdict is less than $50; that they were influenced in agreeing to a lesser sum in order to prevent either party from appealing, and did not base their

**4. NEW TRIAL:** misconduct of jurors: evidence.

finding on the probable loss to decedent's estate.   Defendants moved that these affidavits be stricken from the files, and this might well have been done.   The jury was cautioned to determine the "case according to the evidence produced and submitted to you in open court on the trial and the law as given in charge by the court and these instructions, and upon nothing else," and of their duty "to follow the law as given by the court," and they can not be heard to impeach their verdict by merely assigning reasons for assenting thereto inconsistent with those which should have actuated them in the discharge of their duty.

In *Ward v. Thompson,* 48 Iowa, 588, a motion for a new trial on the ground that some of the jurors supposed exemplary damages, if allowed, would go to the school fund, though nothing had been said in the instructions on that subject, was overruled; the court saying that "affidavits are not admissible to show the understanding of the jurors." In *Fox v. Wunderlich,* 64 Iowa, 187, the rule was laid down that: "The ground on which he (the juror) agreed to the verdict is a matter which essentially inhered in it, and his affidavit can not be received to explain or contradict it." *In Wright v. I. & M. Tel. Co.,* 20 Iowa, 195, the court said, among other things: "The juror should not be heard to contradict or impeach that which in the legitimate discharge of his duty he has solemnly asseverated."

In *State v. Dudley,* 147 Iowa, 645, the affidavits of jurors that they had considered the witnesses' evidence otherwise than directed by the instructions was held to be a matter inhering in the verdict; and it was said that "affidavits of jurors that they have been unduly influenced by their fellows, or of the reasons for assenting to the verdict, or of the improper arguments resorted to in the jury room, or that they did not assent to the verdict, or that it was not the result of their deliberate judgment, or they did not understand the instructions of the court as these matters inhere in the verdict, are incompetent and can not

be received to impeach the jury's findings." The decisions there cited fully sustain this statement of the law. Here the affidavits were that it was claimed by some of the jurors that no appeal could be taken where the verdict was less than a specific amount, and that to prevent an appeal, although contrary to the instructions given, they joined in the verdict. That this amounted to no more than stating a reason for agreeing thereto is apparent, and it was of a matter inhering in the verdict, and because of this the affidavits should have been stricken.

The case is to be distinguished from *Wilberding v. Dubuque,* 111 Iowa, 484, and *Douglass v. Agne,* 125 Iowa, 67, in that these decisions were based upon the consideration of statements of fact having a direct bearing on the issues by jurors during their deliberation; while here the claim is that a reason alone, not suggested in the instructions or evidence, influenced some of them to disregard the instructions in order to influence subsequent procedure in the case. It follows that a new trial could not have been granted properly because of the alleged misconduct of the jurors.

There was no abuse of discretion in setting aside the verdict and awarding a new trial because of the inadequacy of the verdict.—*Affirmed.*