ED. PEKAREK, Plaintiff and Appellee, v. O. F. MEYERS, Defendant and Appellant.

**Negligence:** AUTOMOBILE ACCIDENT: EVIDENCE. In this action for a personal injury caused by the fright of plaintiff's team at defendant's automobile, the evidence is held to authorize submission of defendants negligence in assisting plaintiff to pass the automobile with his team and to support the verdict.

**Appeal:** VERDICT: CONCLUSIVENESS. The credibility of witnesses and the weight to be given their testimony are questions for the jury, and where from the entire record there is substantial ground for honest minds to differ, the appellate court will not interfere with the verdict.

**Negligence:** AUTOMOBILE ACCIDENT. It is the duty of the operator of an automobile, when requested, to assist the driver of a team, which exhibits fright at the machine, to pass; and his failure to use reasonable care in so doing is negligence, and if the proximate cause of an injury he is liable therefor.

*Appeal from Franklin District Court.*—HON. C. G. LEE, Judge.

TUESDAY, MARCH 18, 1913.

ACTION to recover damages for personal injury.— *Affirmed.*

*Jno. M. Hemingway,* for appellant.

*F. J. McGreevy,* for appellee.

GAYNOR, J.—This is an action to recover damages for personal injury and injury to property, which the plaintiff

claims to have sustained, occasioned by being thrown from a wagon in which he was riding, basing his right to recover on what he claims to be the negligence of the defendant in attempting to pass him on the public highway in an automobile. He says in his petition that on the 7th day of May, 1911, he was driving a team hitched to a wagon occupied by himself and others; that the defendant was driving an automobile on the same highway; that the plaintiff had just driven his team onto a part of the public highway where the same is graded, and is high and narrow; that, while he was so driving, the defendant approached him from the opposite direction; that the occupants of plaintiff's wagon signaled to the defendant to stop by raising their hands, and did this before the defendant came onto said grade, and while he was on a part of the highway which could be used to its full width; that the defendant, carelessly and negligently, disregarded the signals and drove his automobile onto said grade, part of the way, close to plaintiff's team, and the team became frightened; that thereupon the defendant was requested to render assistance and to lead the team; that the defendant dismounted from the automobile and carelessly and negligently seized the bridle of one of the horses in an angry manner, and led the same a short distance, and then negligently and wrongfully struck the horse, and thereby frightened the team and caused the same to run away and upset the wagon in which plaintiff was riding, throwing the occupants and contents of the wagon to the ground, and severely injuring the plaintiff and destroying his property. Defendant, for answer, admits the meeting, but alleges that at the request of the plaintiff he turned his automobile from the road and stopped the same and shut off the power and came to the plaintiff's assistance, but denies that he was negligent in assisting the plaintiff to pass the automobile; denies that he struck the team or did anything to frighten the horse; claims that he conducted the horses for several rods past the automobile, and only let go of them when they were apparently proceeding in a safe and

steady manner, and that the running of the team thereafter and the injury to the plaintiff was without any fault or negligence on his part.

At the conclusion of the testimony, the court withdrew from the consideration of the jury all charges of negligence, except that embodied in the claim, that the defendant was negligent in the manner in which he attempted to assist the plaintiff to pass, saying: "The only question of negligence that will be submitted to the jury is the question whether or not defendant was negligent in what he did in the way of assisting the plaintiff to pass the automobile. If he failed to use ordinary care in what he then did, he was guilty of negligence, and that is a question for the jury. I am satisfied, under the record in this case, that there can be no recovery for alleged failure to stop the automobile where the automobile was stopped. The team was under control at the time he undertook to pass, and the evidence of previous acts would not be the proximate cause of the injury that resulted." The issue as to whether or not the defendant was negligent in what he did, in the way of assisting the plaintiff to pass the automobile, was submitted to the jury, under proper instructions, and the jury returned a verdict for the plaintiff, and from this verdict the defendant appeals, assigning as grounds for reversal the following alleged errors on the part of the court: (1) That the court erred in not sustaining defendant's motion for an instruction to the jury to return a verdict for the defendant, in that the evidence failed to show any negligence on the part of the defendant. (2) That the court erred in overruling defendant's motion for a new trial, based on the ground that the verdict of the jury was not sustained by the evidence, for the reason that the evidence did not show any negligence on the part of the defendant, and affirmatively shows that the plaintiff was guilty of contributory negligence. (3) That the court erred in giving the third and fourth instructions given to the jury.

We have examined the record in this case, bearing on the questions submitted to the jury, and, if we take the plaintiff's

version for it, we find this state of facts: The defendant, after

1. NEGLIGENCE: automobile accident: evidence.

being signaled to stop, came within fifteen feet of the team driven by plaintiff, onto the grade where plaintiff was, and at a place where plaintiff could not turn off the grade. He then stopped and stayed in his car until the plaintiff asked him to get out and help him. "I could have turned off the grade," the plaintiff says, "If he had stopped further back. When I asked him to help me, he hesitated a moment, then got out of his automobile, and was about to take hold of the horse that was not afraid, and I said, 'Take the other one.' He walked around and took the other horse, grabbed for it, and said, 'Come on.' He led it just about ten feet. Then he let go the horse and struck it, and said, 'Go on.' The horse lit out. I was trying to hold them with both hands, but they ran and tipped us out east of the culvert. I didn't hit them with the whip or anything. Before he stopped he turned his automobile off the grade, about fifteen feet away. The car was standing still when I undertook to drive by. I could not unhitch them after he stopped the car. They were up in the air. If I had loosened the lines up a little, they would have run away. When he took hold of the horses, I told him not to let go. The horses were, at the time, frightened and dancing around. The horses started to run immediately, as soon as he let go, and ran until they upset the wagon." Plaintiff's wife testified "Defendant came within fifteen feet of us, onto the grade. He came by the only place where we had an opportunity to get off the grade. My husband was holding the team, or trying to hold them, when defendant stopped his automobile. One horse was frightened and dancing around. My husband told him to take hold of the frightened horse. He took hold of her, and said, 'Now, come on.' He led them about ten feet, then let go, and struck the frightened horse and said, 'Go on.' The horse started immediately to run, as soon as he let go, and ran until we upset." Mrs. Garner was in the wagon with the plaintiff, and testifies to practically the same thing. Defendant denies that he struck the horse, and says:

"That he reached up and patted the horse and spoke gently to it, and rubbed its nose. Reached up as far as its ears and talked, perhaps half a minute, to the horse. The horse was acting, as they said, uneasy. I don't know but possibly that was putting it mild. I took hold with a stiff arm and walked in front of the horse, urging the team. I think I led the horse possibly seventy-five feet, at least far enough to satisfy me he was out of danger. I let go of the horse and stepped to one side of the road. From that time, the horse seemed to be a little beyond the control of the plaintiff."

We have set out so much of the testimony for the purpose of showing that there was a conflict in the evidence upon the question submitted to the jury. We have examined the whole record, bearing on this question, and, while we might have reached a different conclusion than that reached by the jury, we find evidence sufficient to support the action of the court in submitting the case to the jury for its determination, and we cannot therefore, under the repeated holdings of this court, interfere with its verdict.

Under our system, a party is entitled to the judgment of the jury upon the facts. The jury is, as a matter of law, the sole judges of the credibility of the witnesses and the weight to be given to their testimony. Where there is dispute in the evidence, or where it appears from the evidence that honest minds searching for the truth might, on the whole record, reach different conclusions as to what the truth is, the case is for the jury, and this court will not interfere with its verdict.

2. APPEAL: verdict: conclusiveness.

It was the duty of the defendant, on request of the plaintiff, under the circumstances, to render him assistance, and in doing so to exercise reasonable care, such as a reasonably prudent person would exercise, in assisting him to pass the automobile, and a failure to do this was negligence, and, if this negligence was the proximate cause of the damage complained of, the defendant was liable, and the court so told the jury.

3. NEGLIGENCE: automobile accident.

We find no reversible error in the action of the court in overruling defendant's motion for a directed verdict.

We have examined the instruction complained of by the defendant and find the same are not subject to any just criticism, and the case is therefore *Affirmed*.

Evans, J., takes no part.