SNYDER *v.* MATHISON.

1. APPEAL AND ERROR—TRIAL—EXAMINATION OF JURORS ON VOIR DIRE—CURING ERROR.

   Where, in an action to recover for personal injuries received in an automobile collision, a juror was asked on his *voir dire* as to his agency for an automobile insurance company, and an objection thereto was made and sustained, and no further reference to the matter was made by court or counsel, and counsel expressed their satisfaction when two jurors were subsequently passed for cause, *held*, that there was no reversible error.

2. SAME.

   Much latitude is allowed in the examination of a juror on his *voir dire*.

3. WITNESSES—CROSS-EXAMINATION— CONCLUSIONS — AUTOMOBILES —PERSONAL INJURIES.

   In an action to recover for personal injuries sustained in a collision between automobiles, the question put to defendant upon cross-examination, "Your car came around there with such force that the rear wheel hit the Fountain street curb, didn't it?" was properly admitted, over objection that it called for a conclusion.

4. SAME—CROSS-EXAMINATION—CREDIBILITY—PREJUDICE.

   Where a witness was asked on cross-examination as to statements claimed to have been made by him to plaintiff, in whose behalf he was being cross-examined, as tending to show the witness' prejudice or bias against one of the attorneys for plaintiff, sufficient foundation was laid for testimony by plaintiff in rebuttal as affecting the credibility of the witness.

5. SAME.

   Questions on cross-examination of a witness for defendant tending to show hostility to and prejudice towards one of plaintiff's attorneys, are properly admitted for such purpose.

6. AUTOMOBILES—PERSONAL INJURIES—DAMAGES—EXCESSIVE VERDICT.

   In an action to recover for personal injuries sustained in an automobile collision, *held*, that a judgment for $300,

on remittitur, was not excessive, where plaintiff was 75 years old, had two ribs broken, had been kept from work for some time, and earned about $12 a week when at work.[1]

Error to Kent; Perkins, J. Submitted April 16, 1917. (Docket No. 30.) Decided May 31, 1917.

Case by Robert Snyder against Frank H. Mathison and William Vandenberg for personal injuries. Judgment for plaintiff. Defendants bring error. Affirmed.

*H. Monroe Dunham* and *John M. Dunham,* for appellants.

*Smedley & Linsey,* for appellee.

STONE, J. This is an action on the case to recover damages for personal injuries received by the plaintiff, growing out of the collision of two automobiles in the city of Grand Rapids on November 22, 1915. On that day, about noon, the plaintiff, a man 75 or 76 years of age, was riding in a Ford car, being driven by one William Bailey, going south on College avenue, and at the intersection of said College avenue with Fountain street, an east and west street, they collided with a seven-passenger Kissel automobile being driven west by the defendant Vandenberg. Both streets were paved. In his declaration the plaintiff charges the defendants with negligence in the operation of the said automobile, owned by the defendant Mathison and being driven by the other defendant. The plea was the general issue.

Upon the trial, which appears to have been the second trial of the case, it was the plaintiff's claim that the collision was the result of the negligent operation of the larger automobile by the defendant Vandenberg. He claimed that Bailey, who was driving the

[1]On excessiveness of verdicts in action for personal injuries other than death, see comprehensive note in L. R. A. 1915F, 30.

Ford car, was operating it at a moderate rate of speed; that defendants' car was going about twice as rapidly as the other car, and was exceeding the speed limit; that said defendant did not have his car under control; that if he had gone in a straight line the collision would not have happened, but that he swerved his car to the south and ran into the Ford car, threw it against the curb, and turned it over, injuring the plaintiff; and that Bailey was a careful driver, was on the right-hand side of the street, and exercised care and caution, and that the Ford car had the right of way at this intersection. Plaintiff further testified that one of his ribs was broken, and that, because of his age, the shock, injury, and pain resulting from the injury had kept him from his work, and that he would be unable to work for some time; and that his business was that of buying poultry and meats on commission, and his earnings were about $12 a week. This trial took place in May, 1916, about six months after the injury.

On the other hand, it was defendants' claim that Bailey, the driver of the Ford car in which plaintiff was riding, was exceeding the speed limit, driving from 20 to 30 miles an hour; that he was driving on the wrong side of the street; that he threw his brakes on when directly ahead of defendant's car, without any signal, thus causing the collision; that he did not have his car under control; that said defendant had the right of way; and that the accident was caused solely by reason of the negligence of Bailey. Defendants further claimed that at no time, as he approached the intersection, was Vandenberg going over 13 miles an hour; that when he was 25 or 30 feet east of the crossing he saw Bailey, 60 to 75 feet north of the intersection, and that he was coming rapidly; that as he neared the crossing Vandenberg realized he would be struck if he continued in a straight line, so he put on his

brakes and swung his car quickly to the south; that Bailey turned to his right, and tried to shoot out across and ahead of defendants' car; that said defendant had nearly passed plaintiff's car when the right fender of defendant's car struck the Ford; that Bailey improperly applied the brakes to his car just before he was struck, and that he gave no signal to Vandenberg; that the slippery condition of the pavement caused defendants' car to skid, and after striking the Bailey car with the fender, further progress of the defendants' car was stopped, and the force and weight of defendants' car upon the slippery pavement caused it to turn completely around, so that it was headed east when it stopped.

Both parties gave testimony tending to support their respective claims, and we are satisfied that the questions presented by the evidence were for the jury, as there was a sharp conflict in the evidence upon nearly every question involved. The traffic ordinance of the city was put in evidence. Among other things it provides as follows:

"In all the streets of the city, except those lying within the congested district thereof, as herein defined, in case of vehicles approaching each other, the right-hand vehicle shall have the right of way.   *   *   * Drivers or operators of vehicles before turning, stopping, backing, or changing their course, shall make sure that such movement can be made safely, and shall give a plain signal to others on the street by extending or elevating the hand."

It was conceded that the streets involved were not in the congested district, but were in the residence district of said city.

During the examination of Juror Eleveld, by Mr. Linsey, counsel for plaintiff, the following occurred:

"*Q.* How long have you known Mr. Ten Broek?
"*A.* Nearly 40 years.

"*Q.* Do you represent the Londŏn & Lancashire Indemnity Company of London?

"*A.* No, sir.

"*Q.* You have nothing to do with that?

"*A.* No, sir.

"*Mr. Dunham* (counsel for defendants) : It does not strike me that these questions relative to automobile insurance are competent in this case. There is no question of insurance in this case. It is the personal liability of these defendants.

"*Mr. Linsey:* Counsel knows by whom he is employed, and I think I have a right—

"*Mr. Dunham:* I do not think counsel is warranted in making that statement, trying to get things before the jury that are not competent, and I take an exception.

"*The Court:* The statement is not proper. A matter of that kind ought not to be suggested or brought into the case; it is absolutely prohibited under the law, under the ruling of the Supreme Court, and it is reversible error if the statement is made.

"*Mr. Linsey:* I did not mean anything wrong by it, your honor, I thought I was within my rights in examining the juror, but I may not have been."

Counsel for defendants exercised only one peremptory challenge. After exercising this challenge another juror was called, and after his examination the following took place:

"*Mr. Dunham:* Pass the juror for cause.

"*The Court:* Any peremptories?

"*Mr. Dunham:* We are satisfied."

Following that, Mr. Linsey excused another juror; a juror was called in his place, and at the close of his examination the following took place:

"*Mr. Dunham:* We pass the juror for cause.

"*Mr. Linsey:* We are satisfied, your honor.

"*Mr. Dunham:* I am satisfied."

Whereupon the jury were sworn and the trial proceeded.

The defendant Vandenberg was called for cross-

examination under the statute by the plaintiff, and in the course of his examination he was asked by Mr. Linsey the following question:

"Your car came around there with such force that the rear wheel hit the Fountain street curb, didn't it?

"*Mr. Dunham:* Just a minute; the question is objected to as calling for a conclusion.

"*Mr. Linsey:* This is cross-examination.

"*The Court:* Go on.

"*Mr. Dunham:* I think the question is not competent.

"*The Court:* Take the answer.

"*A.* It struck the telephone—my car skidded after I put my brakes on, but I don't know how far."

Dr. William J. Dubois was sworn as a witness on behalf of the defendants. He testified that he saw the accident in question. On cross-examination he was asked the following questions by Mr. Linsey:

"The firm of Dunham & Phelps were formerly your attorneys, weren't they?

"*A.* Yes, sir.

"*Q.* And you had an automobile accident yourself, where Mr. Smedley, my partner, was prosecuting you, didn't you?

"*Mr. Dunham:* Just a minute; it does not seem to me that is competent, or has a thing to do with the case.

"*Mr. Linsey:* Your honor, I claim this: Whatever goes to show the prejudice or bias of any witness is competent, and the jury is told that in every case, in every civil case, or any kind of a case. I think it bears upon the bias or prejudice of this witness.

"*The Court:* Well, answer the question.

"*A.* I did.

"*Q.* And following that you said you would get even with Mr. Smedley, didn't you?

"*Mr. Dunham:* I object to that.

"*A.* I never said any such thing. Mr. Snyder came to my office once after this accident.

"*Q.* And didn't you tell him that the Mathison car was being driven recklessly and carelessly?

"*A.* I did not.

"*Q.* And didn't you tell Mr. Snyder that he had a good case for damages against the Mathison people? "*A.* I did not.   *   *   *   You called me over the phone before the other trial, and I told you I wouldn't talk to you about the case.  I had one experience talking to your firm.  I didn't know that Smedley & Linsey were representing Snyder at the time Snyder talked to me, nor did I know it until I talked with Mr. Linsey over the telephone."

In rebuttal the plaintiff was recalled, and he testified, among other things:

"After the accident I went up to see Dr. Dubois. It was after that that I retained Smedley & Linsey.

"*Mr. Linsey:* I ask you whether or not, when you went up there to see Dr. Dubois, that Dr. Dubois didn't tell you that the big car driven from the east was being driven in a reckless and careless manner?

"*Mr. Dunham:* Just a minute.  The question is objected to: First, it is leading; second, it is improper, as impeaching.

"*Mr. Linsey:* The same question I asked Dr. Dubois.

"*Mr. Dunham:* It hasn't a thing to do with this case.  If he were a party, 'the question would be all right; but, when he is a mere witness, it is entirely improper and incompetent.

"*Mr. Linsey:* It is competent to impeach a witness in that manner, as I understand it.

"*The Court:* He may answer.

"*A.* Yes; he did.

"*Q.* And whether or not he told you at that time that you had a good case for damages against—

"*Mr. Dunham:* That is objected to as a mere conclusion.  I don't think the doctor's opinion as to legal matters ought to govern in a case of this kind.

"*Mr. Linsey:* It does not; it simply goes to the credibility of the witness, is all.

"*The Court:* I do not think the doctor was asked that question.

"*Mr. Linsey:* Yes.

"*The Court:* I hardly think he was asked that question.  If he was not, of course this is not proper.

" (Testimony read.)

"*The Court:* Take the answer.

"*Q.* Didn't Dr. Dubois tell you that you had a good case for damages against the Mathison people?

"*A.* He did.

"*Q.* Did Dr. Dubois at that time know that Smedley & Linsey were your attorneys?

"*A.* He did not; I had not seen them.

"*Mr. Dunham:* That is objected to; what Mr. Snyder knew and the doctor knew."

"*Q.* You did not tell the doctor that?

"*A.* I had not employed any."

Counsel for the defendants requested the court to charge the jury as follows:

"If you find that this accident would not have happened but for the conduct and actions of Bailey, the driver of the car in which the plaintiff was riding, and that that conduct and those actions were not such as would be exercised by a reasonably prudent and careful man under those conditions, then your verdict should be, 'No cause of action.'"

The substance of that request was given. The court then added the following:

"That instruction has reference, I apprehend, to Bailey's claim that he set the brakes just before the car was struck by the Mathison car. Now, that is a circumstance that you may consider as bearing upon Bailey's contributory negligence in driving his car. If a reasonably prudent person would not have done, under the circumstances as they existed at that time and as Bailey thought, as Bailey did in setting his brake in that particular crisis, then Bailey would be guilty of contributory negligence, and the plaintiff, of course, could not recover."

The case having been submitted to the jury in a very lengthy charge, the trial resulted in a verdict and judgment for the plaintiff in the sum of $400. There was a motion by the defendants for a new trial, based upon the grounds that the verdict was contrary to the evidence in the case; that it was contrary to the great weight of the evidence; that the amount was grossly

excessive and unreasonable; also because the jury was not guided by the instructions of the court, and were influenced by prejudice and sympathy; and for errors committed in the reception of testimony, which are also covered by the assignments of error, which it is not necessary to repeat. The trial court denied the motion for a new trial, upon condition, however, that the plaintiff should remit $100 of the judgment, and it was provided that upon the filing of such remittitur the motion would be denied. The $100 was remitted, so that the judgment standing against the defendants is in the sum of $300. The refusal to grant a new trial was duly excepted to.

1. The defendants have brought the case here on writ of error. Error is based upon what occurred relating to the examination of juror Eleveld, above set forth. It appears that this subject was not again referred to by court or counsel upon the trial. We do not think that what occurred should work a reversal of the case. We are not satisfied that the question was not asked in good faith, and much latitude is allowed in the examination of a juror on his *voir dire*. We do not think that the cases cited by appellants are in point. They relate to the examination of witnesses upon the trial. The language of the trial court in sustaining the objection of appellants was sufficiently emphatic. No request to charge on the subject was presented, and we think the subsequent announcement of satisfaction operated as a waiver of the matter. *William R. Roach & Co.* v. *Blair*, 190 Mich. 11 (155 N. W. 696).

2. The second assignment of error is based upon the ruling relating to the question asked of defendant Vandenberg. We do not think there is any merit in the point.

3. The fifth, sixth, seventh, and ninth assignments of error are based upon the questions asked of the

plaintiff in rebuttal relating to the statements of Dr. Dubois. It appears by the record that Dr. Dubois' attention had been called to these matters on his cross-examination, and he denied that he had so stated to the plaintiff. We are of the opinion that sufficient foundation had been laid for the asking of the questions in rebuttal, and that they were proper as affecting the credibility of that witness.

4. The third, fourth, and eighth assignments of error are based upon the alleged improper cross-examination of Dr. Dubois. The questions tended to show hostility to and prejudice toward one of plaintiff's attorneys, and for that purpose we think they were proper. The matter was not followed up, probably because plaintiff was bound by the answer of the witness. We do not think there was reversible error here.

5. By numerous assignments of error appellants complain that:

"The court failed to instruct the jury that the various prejudicial matters complained of, which were interjected into the trial of this cause by counsel for the plaintiff, were improper and should not be considered by them. These things were not corrected in any way."

In the absence of requests to charge upon the subject, and in view of what we have already said, we need not further discuss those matters.

6. Complaint is made of the charge, and especially that part of it above referred to. The charge was a very lengthy one, considering the questions presented, covering 16 pages of the printed record. We have examined it with care, and are of the opinion that it presented every phase of the case in a fair way, and is not open to the criticism of counsel which is indulged in. We find no reversible error in the charge.

7. Finally counsel assign error because the court refused to grant a new trial. It certainly does not

appear that the final judgment of $300 is excessive, or contrary to the weight of the evidence.

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.