C. H. QUENRUD, Appellant, v. MOORE-SIEG CONSTRUCTION COMPANY et al., Appellees.

**NEW TRIAL:** Inadequacy of Verdict. A verdict for $500 for apparently quite serious injuries is not so shockingly inadequate as to justify the appellate court in overruling the trial court in denying a new trial on the ground of inadequacy of verdict.

**APPEAL AND ERROR:** Inconsequential Error. A plaintiff who has convinced the jury that the defendant was negligent on one ground may not complain that he was prevented from showing that the defendant was also negligent on another ground.

**NEW TRIAL:** Misconduct of Jury—Failure to Show. Evidence held insufficient to show that certain alleged misconduct took place.

**MUNICIPAL CORPORATIONS:** Nuisance—Notice. A city is not
4 liable for the negligence of its contractor in allowing steam to ''pop
off'' from a traction engine, with resulting fright to plaintiff's
team and injury to plaintiff's person, when said ''pop'' was purely
casual—the only one that ever occurred.

*Appeal from Winneshiek District Court.*—W. J. SPRINGER,
Judge.

FEBRUARY 8, 1921.

REHEARING DENIED MAY 10, 1921.

THIS is an action for damages for personal injuries. The
trial court held that the city of Decorah was not liable for the
negligence, if any, of the contractor, the other defendant, and
directed a verdict in favor of the city. The case was submitted
to the jury as to the construction company upon the allegations
of negligence, as to allowing the steam to pop off, and negligently
operating the traction engine. The jury returned a verdict in
favor of plaintiff for $500, upon which judgment was entered.
Plaintiff appeals.—*Affirmed.*

*E. W. Cutting* and *William S. Hart,* for appellant.

*Stipp, Perry, Bannister & Starzinger, J. A. Nelson,* and
*Willett & Nelson,* for appellees.

PER CURIAM.—Plaintiff claimed that, while riding in an
empty coal wagon, driving a single horse, he attempted to drive
by a ditching machine, which was being moved by the defendant
construction company along one of the streets
1. NEW TRIAL: of the city of Decorah, to the place where it
inadequacy of
verdict. was to be used in digging trenches for sewers,
which were to be constructed under a contract between the con-
struction company and the city. Plaintiff claimed that, as he
got alongside of the machine, the traction engine which was
pulling the ditcher was allowed to pop off, or blow off steam,
causing his horse to shy, and throwing him out of the wagon,
injuring him. The questions raised on the trial were whether

the steam did or did not pop off; whether plaintiff was negligent in trying to drive by the ditching machine, or should have gone around, another convenient way, and as to the extent of plaintiff's injuries. As to this defendant, the jury found against it on the questions of negligence and contributory negligence.

1. We shall take up first plaintiff's appeal as against the construction company. The principal point relied upon, and the one most elaborately argued, is the claim that the verdict, under the evidence, is inadequate. An exhaustive brief and argument has been filed, wherein a large number of cases are cited on the question as to whether a new trial may be granted where the verdict is inadequate, and many instances are cited where, under the circumstances of a particular case, the verdict was held to be inadequate.

Appellant's version of the evidence, which this appellee contends is greatly exaggerated, bearing upon the character and extent of plaintiff's injuries and his damage, is given by the different witnesses, substantially and briefly, this way: He was thrown, and fell on his head and shoulder; seemed to be unconscious from the effect of it. Another witness says he saw plaintiff after he was hurt that day; that he seemed to be hurt pretty badly at that time; that he couldn't say whether he was conscious as to what was going on; that they were kind of leading him along, helping him. Another says that then a dray came along and took him in and took him home. Another helped pick him up, and says one arm hung down; that he was weak after they put him in the dray; that he doesn't think he had regained consciousness at that time, 10 or 15 minutes after the accident. Plaintiff was hurt March 25, 1916. Plaintiff's testimony: 47 years old; had been working for a lumber company, delivering lumber and coal; before that, worked on the transfer for two years, draying; was delivering coal at the time he was hurt; was receiving $13 a week at that time; wages have gone up since then, from 25 to 50 cents a day; before he was hurt, he was a strong, good working man; general health good; nothing the matter except a slight defect in hearing; was able to and did work steadily; remembers being thrown off and hitting the curb, and that was about all; was hurt between 5 and 6 o'clock in the afternoon, and came to about 2 o'clock the next morning; doesn't

have much recollection between that time and the time he was hurt; when he came to, was in great pain in his head, neck, back, shoulders, and side; shoulder and arm were tied up; continued to lie in bed until the next Monday morning; during that time, was in awful pain; was in awful pain all the time; during those two days didn't sleep any; at the end of those two days, sat up; wasn't able to lie down because of the pain; propped up in chair; sat up on chair about two weeks, during which time had awful pains, didn't sleep much; had trouble about raising his head; still has that trouble; right arm was dislocated at the elbow; it was in a sling about ten days; it appeared to be stiff after taken out of the sling; painful condition of the arm and elbow continued about two months; shoulder blade was broken; painful; pain continued about two months; had a fractured rib; there was pain in that region; that pain continued about four months; principal pain was in the head and neck; still continues; it is a hard pain; had 50 treatments from Doctor Stabo; exercised and limbered up, under the doctor's direction; used electrical treatments; the shoulder blade was broken, and the collar bone; the bone on the back of the shoulder, also the one in front on the right shoulder, and the second rib on the right side; hasn't been able to work since the injury; made effort to do so, to see if he could work; this was about the first of July; tried to help put up a hay loader; wasn't able to work; tried to work for about a day; was weak and trembling; later tried again to work; condition about feet and lower limbs different from what it was before; feet felt like they go to sleep. On cross-examination, he says:

"Have done a little work around home; worked for Ingvolstad about one day in August; went out in the country May 10th, and stayed five days; went out and came back in a horse and buggy; he drove; made two other trips since then; watched them numerous times finishing the sewer, during the summer and fall."

Mrs. Quenrud gave similar testimony.

Doctor Stabo says he has known plaintiff 12 years pretty well; that he treated him for minor illness, colds, and things of that sort; that, 3 to 5 years ago, he was in good condition; that he didn't see him just before he was hurt; that he saw him March

25th, at his home; that he was lying on the bed, and looked rather bad, perspiring cold perspiration, and very weak, in a shocked condition, pulse bad, intermittent, irregular; that he gave him a hypodermic of strychnine for stimulant; that he called in Dr. Hexom to help give an anæsthetic and reduce the elbow. It was out of joint, but no fracture. The second rib was fractured; lower part of the scapula was fractured. Besides that, he had a fracture here (indicating), and was bruised badly here (indicating), and was bruised on the wrist and shoulder; quite a little swelling on the outside here (indicating), along the right side of the tendons. Found a condition of shock; waited an hour before giving him an anæsthetic. His injuries were painful. He complained of pains particularly in his neck and shoulder. He was a little dazed at first, and when the doctor asked him if he had been injured, he said, ''I have been unconscious.''

''I finally got his arm in very good shape, and he has full use of it; can't notice there's anything wrong with it. His main trouble, he has been nervous since,—trauma-neurosis, a disease hard to get over. Sometimes it can be cured quick, sometimes never. Trauma-neurosis means some kind of nerve or brain trouble that comes with a wound or injury; may result from overwork or brain fag. In severe cases, death can result very quick from the concussion. Can't tell whether he can be cured or not. Plaintiff's collar bone was not broken; the only break in the shoulder blade or scapula. This was broken about an inch and a half from the lower end. The bone, if it has been properly set, knits together; the tissue thrown around the facture gradually absorbs away. It often happens that a break, if well set, and it knits, is as strong at the point of fracture as before. The fractures in the second rib and scapula have united. There is no more pain after that. Know of no condition of either of these fractures that are bad. If a patient worries about himself, that is hurtful factor in the treatment of nervous cases. A lawsuit or undue worry is known to prolong the symptoms. The charge for my services was $94.''

Dr. Hexom gave similar testimony as to his visit when the anæsthetic was administered, and as to plaintiff's injuries, though without going into so much detail. Other witnesses

gave evidence as to the details of the accident, bearing upon the question of negligence and contributory negligence.

This appellee points out that plaintiff was up and out of bed after two days; that he was able to drive in the country a distance of 18 miles in an open buggy within very few weeks after the injury, and that he drove alone; that he watched the work of the sewer; that he was able to get around in hot weather; that he worked around home some, during the time when he claims he could not work; that plaintiff testified that his collar bone was broken, when it was not broken at all; that the only thing the matter with him, at the time of the trial, as testified by the doctor, was traumatic-neurasthenia, or neurosis; that his other injuries quickly healed up. They claim, too, that he could have worked, if he had wished to, and had it not been for the claim for damages. They claim further that plaintiff did not make a frank witness, because he claimed not to remember the alleys or driveways in the vicinity of the accident, although he had lived in Decorah many years.

The trial in the district court lasted eight days. Plaintiff was in court, under the observation of the jury. The trial court also, in the exercise of its discretion in passing upon the motion for new trial, had an opportunity to observe the plaintiff.

As said, several cases are cited by appellant, beginning with *Tathwell v. City of Cedar Rapids*, 122 Iowa 50, as holding that a new trial may be granted, where the recovery, under the evidence, is inadequate, and that it is the duty of the court to grant a new trial, where the jury has not understood the evidence, or has failed to consider some elements, or where their action is perverse. Appellee does not dispute the proposition, and the question seems to be settled. See *Strever v. Woodard*, 160 Iowa 332, a case where there was a verdict for nominal damages growing out of a highway accident, where there was proof of substantial damages; *Migliaccio v. Smith Fuel Co.*, 151 Iowa 705, where there was a verdict for $49.50, for the death of a 36-year-old laborer, etc.; *Stone v. Turner*, 178 Iowa 561; *Clark v. Iowa Cent. R. Co.*, 162 Iowa 630. In the two last-named cases, the trial court granted a new trial, and we held that there was no abuse of discretion. The last-mentioned case was a death case, where there was good earning capacity, and a life expect-

ancy of 26 years. The verdict was $400. As said, a large number of cases are cited where verdicts were allowed for different amounts, under the circumstances of each case, which were held inadequate, or the discretion of the trial court, in granting new trials, was upheld. It may be conceded that the recovery was not as large as the usual run of cases. Had it been for a considerably larger amount, we would not be authorized to say that it was excessive. Had it been for $3.11, it would have shown both that the jury was perverse, and that they failed to consider the case, and the elements properly to be considered. Had it been for $20,000, it would doubtless have been held excessive. In either event, it would have been such as to shock the conscience. That seems to be the test. The recovery was for $500— a substantial recovery. We have in mind cases cited in the *Ideal Cream Separator* case, infra, where a verdict for $2,300 was held not inadequate for the loss of a person's legs, and another case where $15,000 was held not excessive for a like injury. What ought the verdict to be in this case? There is no fixed rule. Who determines the question? The jury. Some juries are more conservative than others. Even though this court, as the triers, would award a larger amount, this does not justify a reversal, and a holding that the recovery is so inadequate as to warrant it. It is a case where the trial court had a discretion in the matter, and, in overruling the motion for new trial, it was its judgment that the recovery was not so inadequate as to justify interference. The test, or at least one of the tests, is that, before a verdict can be said to be inadequate or excessive, it must be such as to shock the conscience, and point inevitably to the conclusion that the jury was misled, or acted perversely. *Hall v. Chicago, B. & Q. R. Co.*, 145 Iowa 291; *Ideal C. S. R. Works v. City of Des Moines*, 167 Iowa 517; *Gnecco v. Pederson*, 154 N. Y. Supp. 12.

Appellee cites the following, and numerous other cases, to the proposition that, in cases of this kind, the jury exercises a large discretion in awarding damages, and that the amount is peculiarly a jury question. *Albrook v. Western Union Tel. Co.*, 169 Iowa 412; *Pekarek v. Meyers*, 159 Iowa 206, 210; *Hall v. Chicago, B. & Q. R. Co.*, supra. They also cite the following cases, among others, to the proposition that courts have refused

to set aside a verdict, as inadequate, for similar or more serious injuries. *Palmer v. Cedar Rapids & M. C. R. Co.,* 124 Iowa 424; *Rice v. City of Council Bluffs,* 124 Iowa 639; *Lord v. Roberts,* 102 Neb. 49 (165 N. W. 892); *Snyder v. Mathison,* 196 Mich. 378 (163 N. W. 104); *Robinson v. Town of Waupaca,* 77 Wis. 544; *Wunderlich v. Mayor, etc., of New York,* 33 Fed. 854.

2. Several of the assignments of error are based upon the ruling of the court in excluding one of the ordinances of the city of Decorah, purporting to regulate and license the operation of traction engines upon the streets of the city. We need not determine whether the ordinance was admissible or not. Plaintiff's claim is that its violation constituted negligence; but the jury found that this defendant was negligent. If they had found that it was also negligent in violating one of the ordinances of the city, this would only have resulted in a finding of negligence, and that was already found. It had no bearing on the amount of the verdict. The other errors in regard to the admission of evidence were cured by the verdict in plaintiff's favor.

2. APPEAL AND ERROR: inconsequential error.

One ground of the motion for new trial was alleged misconduct on the part of the jury. One Welch filed an affidavit that, after the arguments had been closed, and before the jury were instructed, and while the jurors were in the corridors of the courthouse, he heard one T. H. Johnson talking to and in the presence of some of the jurors, and that said Johnson said that Mr. Hart talked too much; that his talk didn't amount to anything; and that a juryman laughed and said, "We have heard a lot of that stuff around here," and so on; and that Johnson offered to bet that the sewer company would win the case. Plaintiff filed an affidavit that another party told him that he heard said Johnson offer to bet that plaintiff would lose the case; that such party refused to make an affidavit, when requested to do so. The plaintiff's affidavit was hearsay. It was filed by plaintiff, after Johnson and others had filed affidavits for the defendant. Said T. H. Johnson filed an affidavit in resistance, in which he specifically denies every one of the statements of Welch. He

3. NEW TRIAL: misconduct of jury: failure to show.

says he did not talk with the jurors in relation to the case at all; that he only passed the time of day with some of them. Affidavits of three of the jurors were filed, in which they say that Johnson at no time in their hearing made any remark of any kind, concerning the case or the attorneys; neither did they see or hear Johnson talk to any member of the jury, or in their presence or hearing, or make any remark concerning the case or the attorneys; that Johnson's name was not mentioned, nor was any remark alleged to have been made by him mentioned during the deliberations of the jury. None of the parties or attorneys or anyone interested in the case was concerned in the transaction, if it occurred. The weight of the evidence shows that the transaction did not occur, as sworn to by Welch. The court, by overruling the motion, must have so found. Appellee cites a number of cases to the point that the matter inhered in the verdict. Considering all the circumstances, we think there was no error at this point.

The defendant is not complaining of the instructions; and because plaintiff had the verdict, we think he may not complain of them, unless, perhaps, they omitted some element of damages which would affect the amount of the verdict. No such claim as that is made. For the reasons given, we think the case should be affirmed as to this defendant.

3. As to the plaintiff's appeal from the directed verdict in favor of the defendant city, numerous grounds are given why there should be a reversal; and, on the other hand, appellee city argues a number of the reasons for affirmance. We deem it unnecessary to go into the evidence or circumstances of all of them. It is enough to say that no notice was shown to the city of the alleged nuisance. It appears that the construction company was just preparing to commence the work. The popping or blowing off steam, which it is claimed caused plaintiff's injury, was the first occurrence of the kind. It was not shown that the construction company had been in the habit of doing the act complained of, or that it would ever occur again. There was no element of permanent nuisance, and no showing that it was habitually recurrent. The negligence charged against the traction engine in question was casual. As bearing upon the propositions just

4. MUNICIPAL CORPORATIONS: nuisance: notice.

stated see *Parmenter v. City of Marion,* 113 Iowa 297; *Sikes v. Town of Manchester,* 59 Iowa 65; Note to *Elam v. City of Mt. Sterling,* 20 L. R. A. (N. S.) 690, and cases. Numerous cases are cited to the proposition that the operation of the traction engine in question on the public highways was authorized by law, and that the city is not responsible for the negligence, if any, of the operator thereof, and to the further proposition that the engine and ditching machine were used in connection with the construction of a necessary work of public improvement, and that their presence in the public streets was a proper and rightful use. The trial court properly directed a verdict on the first ground suggested; and, as said, we think it unnecessary to discuss the other question. On the whole record, the judgment as to both defendants is—*Affirmed.*