BERNICE HOUGH, Appellee, v. CENTRAL STATES FREIGHT SERVICE, Inc., Appellant.

No. 43457.

SEPTEMBER 22, 1936.

REHEARING DENIED JANUARY 15, 1937.

Stipp, Perry, Bannister & Starzinger, for appellee.

Putnam, Putnam, Fillmore & Putnam, for appellant.

PARSONS, C. J.—This case arose out of an accident on Highway No. 6 running across the state of Iowa from Council Bluffs to Davenport, the point of accident being a few miles east of the town of Casey, Iowa.

In the original inception of the case plaintiff made W. P. Ellsworth, H. P. Ellsworth, Central States Transit Company, a corporation, the Motor Carriers Mutual Insurance Assn., and the Central States Freight Service, Inc., all defendants. Before trial, the case had been dismissed against the Central States Transit Company and the Motor Carriers Mutual Insurance Assn., and no service having been had on W. P. Ellsworth and H. P. Ellsworth, their liability was not involved in the present controversy. The only defendant then against whom the case was prosecuted was Central States Freight Service, Inc. So in this opinion the word "defendant" will refer to the Central States Freight Service, Inc.

The accident out of which the action arose took place on March 3, 1934, at about seven o'clock, P. M. The plaintiff was riding in an easterly direction upon Primary Road No. 6, in Guthrie county, at a point about two miles east of the town of Casey. She was in an automobile owned and driven by her hus-

band, Norman Hough. At the time and place mentioned the Hough automobile drove into the Chevrolet auto truck operated by H. P. Ellsworth, which was also headed in an easterly direction, but which had stopped on the highway, and was without flares set out to warn motorists of its presence on the highway. Mrs. Hough was seriously injured in the collision. The truck was a one-and-one-half ton truck owned by a brother of the driver of the truck, W. P. Ellsworth of Kansas City, Missouri, and bore a Missouri license for 1933. It was about 13 feet long, 6 feet wide and about 5½ feet high. W. P. Ellsworth owned three or four trucks, and employed several drivers to haul freight for anybody from whom he could get a load, all over the country. Ellsworth contracted with the Central States Freight Service, Inc., and obtained a cargo to be transported from Omaha to Chicago, and the route taken by the driver of the truck to Chicago was over Highway No. 6.

The driver had hauled freight from July 1933 to March 3, 1934, and hauled cargoes during that period received from the defendant, which had a branch office in Kansas City, Missouri, and also a branch office in Omaha, Nebraska. This truck and driver left Chicago March 1st with a load for defendant to Omaha, arriving at Omaha the evening of March 2d, and delivered the goods on the morning of March 3d at the Central States Freight Service docks at Omaha. The same day he received a return cargo from defendant to be delivered in Chicago. Ellsworth looked after the payment of oil, gas, and repairs on the truck in transporting the various cargoes for the defendant, and defendant paid him nothing except the amount due for the hauling.

At the close of all the evidence in the case various motions were made by the defendant for an instructed verdict, which were overruled. The defendant requested twenty-three different instructions, all of which were refused. The court in giving the instructions to the jury told it in Instruction 5 that the burden of proof in this case is on the plaintiff and before she can recover it is incumbent upon her to establish by a preponderance of the evidence or the greater weight of the evidence certain propositions. The first proposition was that the Central States Freight Service, Inc., had engaged H. P. Ellsworth to transport merchandise by motor truck from Omaha to Chicago, with the expectation and in contemplation by the defendant, that the

said Ellsworth would operate said motor truck in carrying out his employment upon the highways of the state of Iowa, without a permit so to do being first obtained as provided by the laws of Iowa; 2nd, that Ellsworth was negligent in one or more respects set forth in the statement of issues; 3d, that the negligence of said H. P. Ellsworth was the proximate cause of the injury to the plaintiff and the damages resulting therefrom; 4th, that the plaintiff was free from negligence which contributed in any manner or degree to the collision and injuries; 5th, that the plaintiff as a result of the collision suffered damages in some amount; and that if the jury found by a preponderance of the evidence that plaintiff had established these propositions, then it was its duty to return a verdict for the plaintiff; but if it found that plaintiff had failed to establish any one of the propositions then it was its duty to find for the defendant.

In Instruction 8 the jury was told that it appeared in the evidence that the defendant had engaged H. P. Ellsworth to transport certain merchandise from Omaha, Nebraska, to Chicago, Illinois, by motor truck, and that no license or permit had been obtained by anyone from the Railroad Commission of the state of Iowa to operate his truck across Iowa. It instructed with reference to the contention by the defendant that it is not liable or responsible to the plaintiff for any negligence of said H. P. Ellsworth because he was an independent contractor, that if by a preponderance of the evidence it is found that when defendant engaged Ellsworth to transport the goods by motor truck it was expected and contemplated by the defendant that Ellsworth would operate said motor truck without a permit therefor in the state of Iowa, the Central States Freight Service, Inc., would be found responsible for the negligence of the said H. P. Ellsworth. It further instructed that if plaintiff failed to establish by a preponderance of the evidence that the defendant did contemplate that said motor truck should be operated upon the state highways without a permit, then the defendant was not responsible for any negligence of said H. P. Ellsworth, and the verdict should be for the defendant.

Centering around these instructions there arises a controversy in the case which warrants it being brought to this court.

The defendant had pleaded that it engaged Ellsworth as an independent contractor to transport the goods from Omaha to Chicago, and the plaintiff contended that in so engaging him, if

the defendant engaged Ellsworth to do this in disregard to the laws of the state of Iowa, and in violation thereof, he was not an independent contractor and could not be considered such, and that the defendant would be liable for his acts. This case must be determined on these controversies.

The case was submitted to the jury, which returned a verdict for the plaintiff. The court finally cut down the amount of the verdict to ten thousand dollars. Motions for new trial, exceptions to the instructions, etc., were filed and overruled, and by reason of that defendant appeals.

The evidence in the case is such that had only the Ellsworths been the defendants in the case, the court would have had to send the case to the jury, for the evidence disclosed that on the evening in question, after dark while it was raining, the truck was stopped on the highway; that its right wheels were either close to the edge of the pavement, or just off the pavement on the shoulder of the road. It is undisputed that there were no flares out, the driver himself testifying that he stopped because he thought his gas was running low and he went around the truck to cut in the reserve tank; that he did not place flares out, as required by law; and the automobile coming from the west ran into the rear of the truck.

The injuries suffered by the plaintiff were severe; her husband was driving the automobile, and the negligence of the husband, if any, is not imputable to her, she being merely a passenger in the automobile. So in the light of this testimony, there was evidence enough against the truckers for a jury case.

As to the defendant, and whether or not there was a case against it, the evidence shows by various exhibits and otherwise, that this defendant had contracted with H. P. Ellsworth, the driver of the truck, on various occasions, commencing with January 20, 1933, somewhat more than a year prior to the accident in question, for transporting merchandise from place to place. These contracts were introduced in evidence as Exhibits 1, 2, 3, 4, 5, and 6.

The first contract called for the transportation of a cargo from Chicago to Kansas City, dated January 20, 1933; the second contract, dated January 26, 1933, called for transportation from Chicago to Kansas City; the third contract dated February 1, 1933, was from Chicago to Kansas City; the fourth contract dated February 13, 1933, was from Chicago to Kansas

City; and the fifth contract dated February 21, 1934, from Chicago to Omaha; and the sixth contract dated March 1, 1934, was for transportation from Chicago to Omaha. A return trip from Omaha to Chicago after this latter contract was fulfilled, was the trip during which time the accident involved herein took place.

These contracts are identical in form. They undertake to create Ellsworth an independent contractor, the body of the contracts providing that the carrier is solely responsible for the handling of the merchandise in transit and for its delivery in good condition; the carrier is to provide all his own equipment and employees necessary to transport the merchandise; it is expressly understood and agreed that the contract is not one of employment or agency; and in transporting merchandise the carrier is an independent contractor and shall at all times be considered and treated as such. So in the face of the contract between the defendant and Ellsworth, the defendant undertakes to create an independent contractor of Ellsworth.

The record further shows that the freight carried on the return trip in question was delivered to the carrier by the agent of the defendant at Omaha, and that the defendant had agencies in Omaha and at Kansas City. It appears further that there was some difficulty in the courts between the Iowa Railroad Commission and the defendant; that the Central States Freight Service, Inc., had not received any certificates permitting it to do business in Iowa, and to use the highways for the transportation of freight; that during the time of the difficulties between the Commission and the defendant and their allied institutions, the attorneys for the Central States Freight Service, Inc., and Central Transit Company and for one Hoey and the Hoey Cartage Company, wrote and sent to the Secretary of the Railroad Commission a letter, reading as follows:

"In re Wm. J. Hoey dba, Hoey Cartage Company
"Dear Sir:
"Mr. Wm. J. Hoey dba Hoey Cartage Company has applied for Certificate for interstate shipments over Highways Nos. 6 and 30 through the State of Iowa. Mr. Hoey is the Superintendent of the Central States Freight Service, Inc. and Central States Transit Company, both of Chicago, Illinois. He has ap-

plied for permit in behalf of these companies and all of the business of these companies with the State of Iowa from this time forward will be done under his certificate.

"In other words, from this time forward, no motor carrier freight in the State of Iowa will be authorized by the Central States Freight Service, Inc., or Central States Transit Company to represent those companies except that Mr. Hoey and the Hoey Cartage Company will act as carrier for the goods of those companies in the State.

"The application of Sal DeCeanne, 1300 Jackson Boulevard, Chicago, Illinois, dated May 17, 1933, which was filed in behalf of the Central States Freight Service, Inc., is hereby withdrawn by permission of the applicant.

"In this connection, we respectfully ask that the temporary injunction against the Central States Freight Service, Inc., and the Central States Transit Company be released as per conversation between the Commerce Counsel and members of your Department today."

This was signed by the attorneys for Wm. J. Hoey dba Hoey Cartage Co., Central States Freight Service, Inc., Central States Transit Company.

It is the contention of the plaintiff that the record shows the defendant Central States Freight Service, Inc., was engaged and had been for a long time, in transporting goods across the State of Iowa by truck, hiring trucks here and there without regard to whether or not the trucks had ever obtained any permit authorizing them to cross the state, or to haul freight over the roads of this state, and that this being true, the Central States Freight Service, Inc., was engaged in an illegal business in conducting its freight service through the various truckers it employed.

Exhibits F and G were monthly reports of Hoey, to the Board of Railroad Commissioners of Iowa. Exhibit F made in February, 1934, showed the Ellsworth truck had traveled over the Iowa roads during February of 1934 318.42 miles, which is the distance across the State of Iowa from Omaha to Davenport, on Highway No. 6. The tax paid on this was $9.55. Exhibit G was a similar report for March, 1934, showing a tax paid of $4.54.

Mr. Hoey was superintendent of the Central States Freight

Service, Inc., and he appeared in that capacity as seen by reference to the letter Exhibit E.

It further appears in the testimony of this case, by deposition of H. P. Ellsworth, that he was using the truck of his brother W. P. Ellsworth of Kansas City; that he did not have a permit of his own to operate the truck in hauling these loads for the Central States Freight Service, Inc.; nor did his brother have one on that separate truck, to operate over the roads of Iowa as a motor truck carrier; and that in performing his work as a carrier he operated under the permits of these companies for whom he hauled cargoes. This was also true of the Central States Freight Service, Inc. Ellsworth said he did not have any intention of violating the laws of Iowa, and that he understood it was necessary only to pay the tax to the state, as required by law.

Mr. Pierce, the agent of the defendant at Omaha, testified that about ten per cent of the business done at Omaha consisted of freight cargoes hauled eastward from Omaha to Chicago across the state of Iowa. He said he did not know it was necessary for eastward-bound trucks to have a permit; that he did know they had to have a permit from east to west. He was asked, "How did you figure the permit could be required from East to West and not from West to East?" to which he replied: "It was never called to my attention"; and the question was asked, "You just didn't care about that, is that about the size of it?" to which he answered, "It is being universally done." "Q. Do you mean to say that as far as the Central States is concerned? A. Well, the trucks went back."

He further testified that it was his impression that the company procured a permit for operation of these trucks through the state, and he didn't insist on the truckers having their own license. In fact, it appears from the testimony in the case, without dispute, that the only license the truck in question had was a license from the state of Missouri; that no attention whatever was paid to the laws of the state of Iowa.

The nonliability of the employer for the acts of an independent contractor has been considered in a number of Iowa cases, and the rule is laid down in Parrott v. Railway Co., 127 Iowa 419, 103 N. W. 352. In determining whether one employed to do certain work for his employer is an employee only or an independent contractor, the test is whether the employee repre-

sents the employer as to the result of the work or as to the means. In the former case he is an independent contractor, but in the latter case merely an agent or servant. In the case cited, the contractor agreed to do and furnish all work, tools, supplies, machinery and equipment of every kind necessary to do all the grading required for filling Melbourne bridge at Melbourne, Iowa except 100 feet on each side of the center line of the Chicago, Milwaukee & St. Paul Railway Company's crossing. Such grading was to be done under the direction and to the satisfaction of the chief engineer of the company and his assistant, and the embankment was to be of such width as they directed. Judge Ladd wrote the opinion of the Court.

Another case held that if the person sought to be charged with the wrongful act of another, did not contract with him for his labor or services, and is not liable to him for compensation therefor. and has no such control over him as will enable him to direct the manner of performing the labor, he is not liable. Callahan v. B. & M. Ry. Co., 23 Iowa 562; Humpton v. Unterkircher & Sons, 97 Iowa 509, 66 N. W. 776; Overhauser v. American Cereal Co., 118 Iowa 417, 92 N. W. 74; Pace v. Appanoose County, 184 Iowa 498, 168 N. W. 916; Aita v. Beno Co., 206 Iowa 1361, 222 N. W. 386, 61 A. L. R. 351; Svoboda v. Western Fuel Co., 195 Iowa 1137, 193 N. W. 406.

Our decisions along these lines are in conformity with the general rule under the subject. These matters are also the subject of several notes in the L. R. A. reports. Arthur Jacobs v. Fuller & Huttsinpiller, 67 Ohio St. 70, 65 N. E. 617, 65 L. R. A. 833. This note runs from page 833 to page 856, inclusive. Also note Saliotte v. King Bridge Co., (C. C. A.) 122 F. 378, 65 L. R. A. 620; Anderson v. Fleming, 160 Ind. 597, 67 N. E. 443, 66 L. R. A. 119. The rules laid down therein are fully in accord with the decisions of this court.

Instruction 8 of the court, complained of in this case and hereinbefore commented on, simply told the jury that if by a preponderance of the evidence it is found that when the defendant engaged the said H. P. Ellsworth to transport these goods by motor truck, it was expected and contemplated that Ellsworth would operate the truck in Iowa without a permit, that the defendant would be responsible.

This instruction was based upon the theory that the defendant contracted with the trucker in contemplation that he would

in some way or other evade the law of Iowa in regard to his truck crossing the state with a load, founded upon the idea that if such was the case, then the trucker was not an independent contractor and the defendant would be liable.

It is certainly not the law, that one may contract with another with the view of having him do something illegal and accomplish his ends, and then shield himself behind the rules as to an independent contractor. If one can do that he can contract with another for smuggling in goods; to do as is frequently done, run Chinese between Mexico and the United States, and to do many other things that the law forbids. So if in this case the defendant knew and had good reason to know, that the Ellsworth trucks had no business in Iowa until they had complied with the laws of this state, and the contract was entered into, by the Ellsworths and the defendant, with this in mind, both parties would be clearly liable, whether it be put upon the ground of joint tort feasor, or that the truck company was the servant of the defendant herein.

Zimmerman v. Brown, 30 Idaho 640, 166 P. 924, 926. The statutes of that state require that one selling livestock in the state must, before offering it for sale, have it examined by a veterinary whose finding must be approved by the Livestock Sanitary Board. In the event the animal is not found to be afflicted with one or more diseases named in the act, it is the duty of the board to issue a license certificate, indicating what defects, if any, it possesses, and whether or not it is pedigreed, or subject to registration, and authorizing that it be stood for public service or sold within the state. This certificate must be recorded in the office of the county recorder of the county wherein the animal is kept for public service or offered for sale, and while it is so kept or is for sale the owner must keep a copy of the certificate in a conspicuous place on the door of the building where it is stabled; and penalty is provided for noncompliance with these provisions. The court says:

"A statute prohibiting the making of contracts, except in a certain manner ipso facto makes them void if made in any other way. * * * Where a license is prescribed by statute not as a revenue measure, but for the protection of the public, as a requisite to a particular trade or business, such as that of the keeper of a stallion, contracts violative thereof because of lack of license

are void." And in this case it was held that notes for the purchase of the animal were void where the statute was not complied with.

In Douglass v. Peck & Lines Co., 89 Conn. 622, 95 Atl. 22, 24, after citing the general rule that the proprietor is not liable for injuries caused by an independent contractor or his servants, the court said:

"If the work contracted for be unlawful, or such as may cause a nuisance, or is intrinsically dangerous, or in its nature calculated to cause injury to others, or if the contractee negligently employs an incompetent or untrustworthy contractor * * * or if he is under legal duty to see that the work is properly performed, the contractee will be responsible for the resultant injury."

One cannot contract with another person as an independent contractor to do an unlawful thing and thus escape the consequences of damages occasioned thereby, is said in Missouri, O. & G. Ry. Co. v. Brown, 41 Okla. 70, 136 P. 1117, 50 L. R. A. (N. S.) 1124.

Pine Mountain Ry. Co. v. Finley, (Ky.) 117 S. W. 413, holds that where an employer lets a contract to an unsuitable person, he cannot escape liability for injuries to a third person, on the ground that the one to whom he let it is an independent contractor.

Colgrove v. Smith, 102 Cal. 220, 36 P. 411, 27 L. R. A. 590, holds that persons having a franchise to lay water pipes in streets cannot relieve themselves from responsibility for negligence in failing to cover pipes properly, by letting the work to independent contractors and requiring the latter by express stipulation to perform its duty.

So it is not in all cases where one undertakes to employ an independent contractor, that the employer is absolved from liability. The statutes of Iowa as to truckers are found in chapter 252-C1. These statutes are found in section 5105-c1, section 5105-c6, section 5105-c9, and section 5105-c14. These statutes are as they stood in the codes of 1931 and 1935. By the terms of these statutes Ellsworth was driving a motor truck as defined in section 5105-c1. By the terms of 5105-c6 it was unlawful for any motor truck driver to operate or furnish public service with-

in this state without first having obtained a permit; and under 5105-c9 no permit could be issued or continued in force until the holder thereof had paid the commission the annual permit fee for each motor truck operated thereunder in the sum of $5.00. Section 5105-c14 provides that no permit may be issued until after the applicant files with the commission an insurance policy, or surety bond, in form to be approved by the commission, issued by some insurance carrier or bonding company authorized to do business in this state, in such amount as the commission may deem necessary to protect the interests of the public with due regard to the number of persons and amount of property involved, which insurance policy or surety bond shall bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the operation of such motor truck and for which such truck operator would be liable.

The truck was certainly a motor truck, under the definition in this chapter 252-C1, section 5105-c1. It was certainly necessary, before the truck could be operated and carry a load in this state, to have a permit under section 5105-c6; and preliminary to issuing a permit, under section 5105-c14 a policy of insurance or surety bond was required to be filed.

The record in this case shows conclusively no permit was ever taken out, nor money paid for one, in Iowa, and no bond was ever given. Was the defendant obligated to find out if the trucker it employed had a permit? Did the evidence herein warrant a submission to the jury of the fact of knowledge by the defendant that the trucker had no Iowa permit? The fact that this trucker had no permit in Iowa; that he had given no bond, appears in the record.

We are unwilling to hold that one, without knowledge that the trucker had failed to comply with the law, can at all times be held liable because of making a contract with such a trucker in the event there are accidents such as herein involved. However, if one knows that a trucker has failed to comply with the laws of the state, has no legal right upon the roads of the state with a loaded truck, and then with this knowledge employs such trucker, he is participating in the doing of an illegal act and the defense of "independent contractor" in such a case is not admissible as an excuse to deny liability. We think the authorities so hold.

Appellant, among other cases, cited Leonard v. Kreider, 128 Ohio St. 267, 190 N. E. 634. This case in no way covers the propositions involved herein. In that case truckers were not required to get a permit; it was the freight forwarder who got the permit, the parties acting in the way in which the defendant was acting.

Many other questions having been argued in this case, we believe that the propositions herein discussed dispose of everything that is material in the case. The evidence in this case warranted the jury in finding from the facts that the trucker employed had no rights upon the highways of the state of Iowa, with his truck hauling a load; that the defendant's agents knew this, which is also borne out by the fact that these people had three permits: one for Iowa from East to West on No. 30, from East to West on No. 6, and one from Council Bluffs to Kansas City. These men had the maps before them, they could tell by a glance that it was not practical to freight goods by truck from Omaha to Chicago without going through the state of Iowa. Any other theory would involve the trucks going around through Nebraska, part of Kansas, across Missouri and into Illinois up to Chicago, or by going north and across the State of Minnesota, through a part of Wisconsin and into Illinois, to avoid Iowa; and that the only reasonable method of going from Omaha to Chicago by truck was to cross Iowa, and this, taken with the other facts, must have convinced the jury that the defendant had it in contemplation that these truckers would cross Iowa from West to East. What did they mean by getting a permit from East to West only, and then compelling such trucks to come back to Chicago? They meant to evade the laws of Iowa, to escape the mileage tax in Iowa. In so doing they destroyed any protection they might have by employing Ellsworth as an independent contractor. Therefore, for these reasons, this case is affirmed.—Affirmed.

HAMILTON, STIGER, ALBERT, KINTZINGER, DONEGAN, and MITCHELL, JJ., concur.