Emma F. Parrott v. Chicago Great Western Ry. Co.,
Appellant.

**Railroads:** NEGLIGENCE OF SERVANT: LIABILITY OF MASTER. In de-
1 termining whether an employé of a railway company is a
servant or an independent contractor, the inquiry is, does he
represent the employer as to the result of the work or as to
the means employed; if the former he is an independent con-
tractor, if the latter a servant. In the instant case the con-
tract is construed and held to establish the relation of servant,
for whose negligence in removing soil from private property
the employer was liable.

**Damages:** EVIDENCE. In an action for damages to realty, it is not
2 reversible error to permit evidence of the difference in the value
of land before and after an injury, without first stating such
values.

**Removal of soil:** MEASURE OF DAMAGES. Where land is rendered
3 practically valueless by the removal of soil and the title remains
in the plaintiff, the measure of damages is the difference in
value before and after the injury, and not the mere value of the
soil actually taken.

**Damages:** INSTRUCTIONS. In an action against a railway company
4 for damages caused by the removal of dirt from the plaintiff's
land, it was not error to refuse to charge, on the theory that
land had been taken or that only the value of that actually
taken should be allowed, or that all injuries resulting from the
operation of the railway were adjusted in the sale of the right
of way where it was conceded that the railway company owned
the right of way.

**Removal of soil:** ESTIMATE OF DAMAGE. Damage for the removal of
5 soil outside of a right-of-way should be based on an estimate
of the injury to the farm as a whole and not the injury to the
narrow strip of land from which the soil was taken.

**Instructions.** Where the undisputed facts entitle plaintiff to relief,
6 a charge directing the jury under what circumstances to find
for plaintiff, if erroneous, is not prejudicial.

**Damages:** EVIDENCE: REDUCTION OF VERDICT. In an action for dam-
7 ages against a railroad company for the removal of soil from
the sides of its right-of-way through plaintiff's land, the evi-
dence is reviewed and held to warrant a reduction of the
verdict from $450.00 to $300.00.

*Appeal from Marshall District Court.*— HON. O. CASWELL, Judge.

WEDNESDAY, MAY 3, 1905.

ACTION for damages occasioned by the removal of earth beyond the line of defendant's right of way. Trial resulted in a judgment against defendant, from which it appeals. —*Affirmed* on condition.

*J. L. Carney,* for appellant.

LADD, J.— The defendant's track and right of way extends through the plaintiff's 160 acres of land diagonally. In 1902 the company contracted with one Stoddart to remove the earth from certain cuts, including that in the portion of the right of way mentioned, and fill the approaches of a bridge near Melbourne. The complaint is that in doing so the earth was taken on each side of the track beyond the line between plaintiff's land and the right of way, " to a distance of 10 feet, . . . to a depth of . . . averaging 12 feet, . . . about a distance of 225 rods," leaving the adjacent land without support and worthless for about 10 feet farther; that at places the sides of the cut were left perpendicular to a depth of 25 feet, and that the land will be likely to crumble and fall off 37½ feet back; and that defendant has placed the right of way fence entirely on the plaintiff's land. The witnesses agree in saying that dirt was taken from beyond the right of way line, but differ as to the amount and area from which removed.

The work was done by Stoddart under the contract, and it is contended that this constituted him an independent contractor. In that event he cannot be said to have been the agent of the defendant, and it would not be responsible for the injury. An independent contractor is one who undertakes to do a piece of work according to his own methods, and without being

1. NEGLIGENCE OF SERVANT: liability of master.

subject to the control of his employer, except as to the result of his work.  *Humpton v. Unterkircher,* 97 Iowa, 509. The test to be applied is whether the employé represents his employer as to the result of the work or as to the means. If the former, he is to be regarded as an independent contractor, but, if the latter, merely an agent or servant.  *Overhouser v. Am. Cereal Co.,* 118 Iowa, 417.  With this rule in mind, let us examine the contract.  By its terms:

The contractor agrees to do and furnish all work, tools, supplies, machinery and equipment of every kind necessary to do all the grading required for filling Melbourne bridge at Melbourne, Iowa, except one hundred (100) feet on each side of the center line of the Chicago, Milwaukee & St. Paul Railway Company's crossing.  The material for this filling shall be taken out of a cut south of Melbourne and between stations 700 and 740, or any other cut designated by the chief engineer of the company's railroad.  Such grading shall be done under the direction and to the satisfaction of the chief engineer of the company and his assistant, and the embankment shall be of such width as they shall direct.

The company was " to pay the contractor nineteen and one-half (19½) cents for each cubic yard of grading done, regardless of the length of haul, the same to be measured once only by cross-section in excavation."  All estimates were to be made by the company's chief engineer and assistant, and payments to be made accordingly.  The contractor obligated himself to maintain crossings and fences and keep stock off right of way, and to pay damages to stock or other property or to persons occasioned by his negligence, and also to save the company harmless from all liens; and it was farther agreed that " the contract may be terminated by said chief engineer whenever he shall deem it for the best interests of the company to so terminate it," in which event the contractor was to be paid for the work done at the rate named.  No plans and specifications were attached to the contract, and nothing in it indicated the result to be attained,

save that the earth was to be taken from the cuts and placed in the fill. To what elevation or line was the fill to be raised? To what depth or width were the excavations to be made along the right of way? The contract contains no answers to these inquiries, save in stipulating that the " grading shall be done under the direction and to the satisfaction of the chief engineer of the company and his assistant." The word " grading," as used, is not synonymous with " filling," for the contractor promised to furnish the work, tools, etc., to do " all the grading required for filling." The earth to be used is described as " material for filling," not grading, and the fill, when completed, is designated as an " embankment," not a grade. Manifestly the word was not employed in the technical sense of bringing the surface at the bridge to a line or grade, but in the broader sense of including the excavating and filling contemplated by the agreement of the parties. See *Ryan v. Dubuque,* 112 Iowa, 284. Otherwise the company must be held to have authorized the contractor to excavate from its right of way in any manner or to any extent he might choose — a thing inconsistent with its duty to the public, and inconceivable in the protection of its own interests. As he was to do the grading (that is, excavate and fill) under the direction of defendant's agents, the engineers, Stoddart was not an independent contractor, but the servant of the company, and it is liable for any damages occasioned by the removal of the soil from plaintiff's land.

II. Instead of requiring the witnesses to estimate the market values of the land immediately before and after the injury complained of, the court allowed them to give the difference between such values, without first stating the values. While this practice is not to be approved as strictly accurate, it does not, under former decisions, constitute reversible error. *Richardson v. Webster City,* 111 Iowa, 427; *Millard v. Webster City,* 113 Iowa, 220.

2. DAMAGES: evidence.

Appellant also insists that, in any event, the inquiry

did not call for the proper measure of damages.   Though the removal of the earth rendered the land from which taken practically valueless, the title continued unim-

3. REMOVAL OF SOIL: measure of damages.

paired in the plaintiff.   The injury was to the soil only, and was of a character which precluded all thought of restoration.   In these circumstances, the rule obtains that, " when the injury is to the soil itself, the measure of damages is the difference in the value of the real estate before the injury and after it."   *Rowe v. Ry.,* 102 Iowa, 286; *McMahon v. Dubuque,* 107 Iowa, 58; *Bradley v. Ry.,* 111 Iowa, 562.   In *Harrison v. Palo Alto County,* 104 Iowa, 383, relied on by appellant, the action was for the value of the sand and gravel taken, which had a market value, and not for trespass, and therefore the case is not in point.   Ordinarily, in a case like this, the dirt removed has little or no value independent of the land from which taken; and to fix the measure of damages as the value of such dirt, as was done in *Mueller v. Ry.,* 31 Mo. 262, would deprive the owner of adequate compensation for the injury received. See, as supporting the view expressed, *McGuire v. Grant,* 25 N. J. Law, 356 (67 Am. Dec. 49); *Moellering v. Evans,* 121 Ind. 195 (22 N. E. Rep. 989, 6 L. R. A. 449); *Karst v. Ry.,* 22 Minn. 118; 13 Cyc. 151.

III.   Appellant requested the court to instruct the jury on the theory that land had been taken by defendant; also that the value of that actually taken, only, should be

4. DAMAGES: instructions.

allowed him as damages; and that all the injuries resulting from the operation of the railroad had been adjusted in the sale of the right of way. These instructions were rightly refused.   There was no appropriation of the land.   The soil, merely, was taken, and the damages were such only as were occasioned by the removal of the soil.   The action is in trespass, and not for damages caused by the appropriation of an easement in the exercise of eminent domain; and this is a sufficient answer to the criticism of the instruction for not including some of the features

suitable in condemnation proceedings. As to the instruction
requested, that damages resulting from operation of the rail-
road should not be considered, it is to be said that no claim
therefor was made in the petition. It was conceded that
the company owned the right of way. No witness pretended
to take them into account in estimating the difference in
values of the farm before and after the excavations. The
measure of damages as given by the court necessarily excluded
any allowance thereof, for the value immediately before the
injury must have been of the farm with the rail-
road in operation through it, precisely as the estimate
immediately afterwards. There was no room for a mistake
of the kind the instruction requested was intended to guard
against, and for this reason refusal to give it was not error.

IV. After both sides had rested, defendant moved the
court to strike out all the evidence relating to injury to the
farm as a whole. The excavation extended along both sides
5. Removal of   of a considerable portion of the right of way,
soil: estimate   and, in estimating the damages, it was not neces-
of damage.       sary to do so with reference to narrow strips
of land along the railroad track, instead of the entire farm.
The universal rule, where diminution in value of real estate
is the measure of damages, is to treat the body of land oc-
cupied, cultivated, or made use of as a unit, and compute
the damage to it as a whole, rather than to some particular
part or division of it. See *Lough v. Ry.*, 116 Iowa, 31.
This did not preclude the fullest inquiry as to whether what
was done would affect any land other than that on which
the trespass was actually committed, and, if so, how far
back and the extent and character of such injury, present
and prospective. *Thompson v. Ry.*, 116 Iowa, 215. If it
developed that only the land along the tract would be affected,
there was no impairment to the remainder to be taken into
consideration. If, on the contrary, the jury should agree
with one of defendant's witnesses that the excavations did
work an injury to the acreage from which no earth was taken,

this should have been considered in determining the diminution in the value of the farm in its entirety.

V.   Several paragraphs of the charge ·instructing the jury under what circumstances to find for the plaintiff, if conceded to be erroneous, were not prejudicial, as the undisputed

6. INSTRUCTIONS.    facts were such as to entitle him to a verdict.
The exceptions to rulings on the admissibility of evidence are without merit.

The jury assessed the damages at $450, and appellant contends that the allowance was excessive.   Cuts existed before the excavations complained of had been made, and the

7. DAMAGES: evidence; reduction of verdict.    effect of these was to widen such cuts by the actual appropriation of the dirt from less than an acre of ground, leaving the sides nearly perpendicular.   Some of plaintiff's witnesses testified on the theory that more of the surface had been disturbed, but they did not pretend to know.   The two who measured found the widest place between the banks 113½ feet, and the narrowest 100⅓ feet, and estimated the average width 106 or 107 feet, and an average of 10 or 12 feet deep.   The defendant's engineer found the widest place 115.7 feet, and the deepest 18½ feet.   He computed the land actually taken at one-eleventh of an acre, and up to the fences as replaced at two-fifths of an acre.   As the right of way was 100 feet wide, it is apparent that the strips of earth removed were very narrow. But the witnesses agree that enough is likely to fall or wash in from the sides, so that the upper edge of the cut will recede 1½ times as far as the cut is deep.   Including this, however, there are no data in the record for estimating the surface rendered unfit for farming purposes, including space for the location of a fence, not to exceed two acres in all.   There were no buildings on the land, and its value did not exceed $75 per acre.   The plaintiff's witnesses thought that the excavations injured the remainder of the farm, but their reasons for this were decidedly hazy.   One suggested that gullies would wash out, but how this would be any more likely

back of the line to which it was conceded the earth would finally crumble, than if such line had been that of the right of way, is not apparent, and was not explained. Another thought the continual crumbling would necessitate the repeated removal of the fence. This could be readily avoided by placing it beyond the line to which the crumbling was likely to extend. But defendant adduced the testimony of one witness to the effect that the acreage was damaged in the sum of $1 per acre, and no inquiry was made as to the grounds of his opinion. In view of this evidence, the verdict allowing something for supposed injury to the remainder of the farm should be sustained, but even then it ought not have exceeded $300. If a remittitur of all in excess of this sum is filed within thirty days from the filing of this opinion, the judgment as so modified will stand affirmed; otherwise *reversed*.