WILLIAM D. JENKINS, Appellee, v. STATE HIGHWAY COMMISSION, Appellant.

No. 39534.

MARCH 12, 1929.

REHEARING DENIED JUNE 24, 1929.

*John Fletcher*, Attorney-general, *Gerald O. Blake*, Assistant Attorney-general, and *T. J. Mahoney*, for appellant.

·*Helsell, Helsell & McCall* and *John A. Hull*, for appellee.

MORLING, J.—The right of way sought to be condemned would occupy about 14 acres, east and west, through plaintiff's farm of 456 acres. The farm lies a short distance west of Boone, and consists of the west half of Section 36 and the southeast quarter of Section 35, with some deductions. There are upon it 280 acres of cultivated and 175 acres of pasture land, mostly on "first bottom" of Des Moines River, but not subject to overflow. The general direction of the proposed right of way is somewhat irregularly east and west and south of west. On the east side, the right of way begins about 70 rods south of the center of Section 36, with a width of 80 feet. Somewhat more than half of the highway from the east is through cultivated fields. On the north of the farm is the Des Moines River, running in an easterly direction. South of the river and between it and the cultivated land are timber and pasture, which on the west extend south to the right of way. The west 160 rods of the right of way are through pasture and timber, and extend into the bluffs or hills of which the west part of the farm consists. The farm is intersected by a highway, extending from the easterly part of the south line northwestwardly, also by a little used highway, extending from the center of Section 36 west one-half mile, thence southwestwardly to the highway first mentioned. The buildings are about in the center east and west, but nearer the south than the north line, and some 40 or 50 rods north of the proposed primary road. They are at about the west end of the cultivated land. Some of them are quite old, and they are ordinary in size and construction. There is a tenant house southwest of the buildings and a schoolhouse about 80 rods south of them and on the south side of the new road. The hills to the west of the buildings, according to plaintiff's testimony, are "not over 25 feet higher than" his windmill. He says:

"The pasture west and northwest and southwest of my house

is more hilly than on the river bottom. There is about 35 acres of river land on the original Jenkins farm that has never been broken up, and between that and the house are hills and valleys.''

He speaks of finding gravel in two places, but says that, on the Holms farm, which is a later acquisition than the original farm:

''I do not know whether there is gravel or not. I never dug no holes in it, and it doesn't show in plowing.''

The proposed highway varies from 80 to 140 feet in width. A stock pass is provided, near the middle of its course through the cultivated land. On the west are some culverts and a bridge. Along the west end of the right of way is a creek or ravine. The road so divides the land that 325 acres, of which 180 acres are cultivated, will be on the north of the highway, and 115, of which 100 acres are in cultivation, south of the highway. Plaintiff's testimony places a valuation of $100,000 on the 456 acres before construction,—$222 per acre,—and $50,000 after construction,— a damage of $50,000. Other witnesses for plaintiff place valuations before establishment at $170 to $180 an acre, and $100 to $125 afterward. One of plaintiff's witnesses says that the average price for timber pasture over the county has been about $50 an acre, ''but there are not many timber pastures like this one.'' The valuations given by defendant's witnesses are about $109 to $150 per acre before, and $93 to $132 per acre after construction. Particular valuations of portions of the farm vary from $30 per acre for 5 acres of the highway, as given by one witness, upward. The difference in valuation before and after construction, as averaged in plaintiff's argument, is about $30,000 by plaintiff's witnesses and something less than $10,000 by defendant's witnesses. The construction of the right of way requires the building of about two miles of fence, at a cost of $1.75 per rod.

I. Exception was taken to one of the instructions. We find no prejudicial error in the rulings prior to the ruling on motion for a new trial.

II. The award of $20,000 on the record before us is, in the opinion of the court, grossly excessive, and can only be explained

as being the result of passion or prejudice, for which a new trial should have been granted.—*Reversed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.