CHARLES LUTHI et al., Appellees, v. IOWA STATE HIGHWAY
COMMISSION et al., Appellants.

No. 44047.

DECEMBER 14, 1937.

REHEARING DENIED MARCH 12, 1938.

Boardman & Cartwright, for appellees.

John H. Mitchell, Attorney General, T. J. Mahoney, Special
Asst. Attorney General and Counsel for Iowa State Highway
Commission, F. E. Northup, and L. C. Clark, for appellants.

KINTZINGER, J.—This proceeding was commenced by the
State Highway Commission for the condemnation of certain
land running through plaintiffs' farm for the construction of
Highway No. 88. The commission, appointed to appraise the
damages resulting from the taking of the necessary land for the

highway, assessed plaintiffs' damages in the sum of $3,277.75. The landowners appealed to the district court, where a verdict and judgment was rendered in favor of plaintiffs in the sum of $6,000. Defendants filed a motion for a new trial which was overruled, and defendants appeal.

The amount of land taken comprises 9.63 acres, extending diagonally across the northerly portion of plaintiffs' farm from the northeast to the southwest corner of the quarter section. About 12 acres of the north portion of plaintiffs' farm had already been condemned for a railroad right of way extending in an easterly and westerly direction across that portion of the farm. The railroad right of way is 205 feet wide at the east line of the farm and 295 feet wide at the west end.

The highway, where it enters the northeast corner of the quarter section, is 120 feet wide, extending to the center of the quarter section where it widens as it crosses the railroad right of way. After leaving the railroad right of way, the highway is again reduced to a width of 120 feet. The north portion of plaintiffs' land consisted of about 142 acres, which with the two highways comprised 160 acres. The balance of the farm consisting of 70 acres was attached to the south end. For convenience we herewith attach a plat showing substantially the geographical situation and condition of the land in question.

The evidence shows that this farm was composed of fairly good, tillable, and rolling land, containing a set of fairly good farm buildings and improvements. The land was fenced into 20-acre tracts. The east 40 acres north of the railroad track is good farm land, but the west portion of the land is rolling and described as permanent pasture land. There is a triangular 5-acre tract of land in the southwest corner of the quarter section, lying north of the highway and south of the railroad tracks which the evidence shows to be rolling and steep and good only for pasture purposes. The land north of the railroad and west of the new highway to the west line of the farm is in permanent pasture. The entire farm, however, is generally described as a good, productive farm.

The north portion of the land had already been separated by the condemnation of the right of way for the Chicago, Milwaukee & St. Paul Ry. Company. The land condemned for highway purposes intersects the railroad right of way at about the center of the quarter section, so that plaintiffs' farm is

N

LOCAL ROAD

N.W.¼ N.W.¼

N.E.¼ N.W.¼

142

CATTLE PASS

WELL

ACRES 9.63

88

C.M.& St P.RR.

Pasture

HIGHWAY

TOTAL TAKEN ACRES

CATTLE PASS

S.E.¼ N.W.¼

FARM BUILDINGS

ROAD

ROAD

ROAD

LOCAL ROAD

70

ACRES

PLAT OF
LUTHI FARM
MARSHALL COUNTY
IOWA

again separated by the right of way taken for highway pur-poses. The evidence shows, however, roads and underpasses across the railroad tracks had been constructed prior to the condemnation for the highway, and these crossings and under-passes were so constructed as to leave suitable passageways for cattle and travel between the different parts of plaintiffs' farm.

The evidence also shows that all of plaintiffs' building im-provements were located in the southeast corner of the quarter section and were not interfered with by the new highway. These buildings, improvements, and plaintiffs' orchard and garden re-main intact and are not intersected in any manner by the con-struction of the new highway. The improvements consist of a dwelling house, two barns, silo, hog house, machine shed, one good well with a windmill, and two other wells. The residence and buildings adjoin a public road on the east side of the farm.

The record shows that the south portion of plaintiffs' farm containing 70 acres had no improvements thereon whatever, and this portion of the farm was not intersected, interfered with, or affected in any manner by the construction of the new high-way. The testimony also shows that the condemnation of the land for highway purposes did no damage to this 70-acre tract whatsoever.

The farm was already separated by the railroad right of way over 200 feet wide extending across the center of the north portion of the farm. Ample provisions had been made by the railroad company for crossing the tracks. The record also shows that additional ample provision was made for crossing the high-way by two large cattle passes under the highway, one near the southwest corner connecting the land south of the railroad right of way, and the other near the northeast corner of the farm con-necting the land north of the railroad right of way. These cat-tle passes were made of concrete with concrete floors. In addi-tion to these cattle passes, the Highway Commission also con-structed two surface crossings from fence to fence on both sides of the new highway, and a driveway near the northeast corner of the farm from the paving to the north side of the farm. These crossings were placed at points requested by plaintiff.

Appellant contends that an award of $6,000, being $623 an acre for the land taken, is excessive and that the State's motion for a new trial should have been sustained. The testimony shows without dispute that plaintiffs' farm as a whole was worth about

$21,000. An award of $6,000 for the land taken is, therefore, more than 25 per cent of the value of the entire farm. This amounts to nearly $30 an acre for the entire farm, and almost $45 an acre for the 142 acres composing the north portion of the farm.

Much of the damage to plaintiffs' original farm had already been caused by the separation of the land in the north portion by the railroad right of way through the land long prior to the time of these condemnation proceedings. It is, therefore, clear that the damage to plaintiffs' farm by the construction of the highway is not as great as it would have been had the farm been. in one entire tract at the time of the condemnation for the highway. The testimony shows that although about one half of the, highway runs over good, tillable land, the other half crosses over pasture land.

Plaintiffs' witnesses testified that the value of plaintiffs' farm with all the improvements thereon immediately before the condemnation proceedings was $100 an acre, and immediately thereafter it was worth only about $60 an acre. The evidence of the same number of witnesses for the defendants shows the value of the farm immediately before the property was taken was $100 per acre and the value immediately thereafter was $88 an acre. The substance of plaintiffs' testimony is that the difference between the value of the land immediately before and immediately after it was taken was about $10,000; while that of defendants witnesses was that the difference in the value of the land immediately before and after it was taken was about $3,-500. The amount of the damages fixed by the jury as shown by their verdict was $6,000. There were 9.63 acres taken for the new highway, which would make the damages allowed $623 an acre.

■■■ We appreciate the rule that the taking of property for highway purposes without the owner's consent reduces the value of his farm to a greater extent than the land taken is worth per acre when attached to the farm. A railroad right of way over 200 feet wide across the north part of the farm had already been taken out. The different parts of the farm were, therefore, not rendered so much more inaccessible as to warrant the great reduction in the value of the farm as shown by the verdict of the jury. It is our conclusion that a verdict of $6,000

for the unimproved 9.63 acres, under the record in this case, is grossly excessive and should be reduced.

**▐█▌** Appellees contend that the question of damages is purely one for the jury. We concede it to be the rule that the question of damages in this kind of an action is generally for the jury. This does not mean, however, that the Supreme Court will not reverse a case for excessive damages where the record clearly shows the verdict to be so. Jenkins v. State Highway Commission, 208 Iowa 620, 224 N. W. 66; Parrott v. Chicago Railway Co., 127 Iowa 419, 103 N. W. 352; Youtzy v. Cedar Rapids, 150 Iowa 53, 129 N. W. 351.

In the case of Youtzy v. Cedar Rapids, 150 Iowa 53, l. c. 57, 129 N. W. 351, 352, this court said:

"The court should be, and doubtless always will be, no less ready to interfere and set aside a clearly excessive verdict in condemnation proceedings than in actions of another character, but it is to be remembered that in such proceedings the lot owner is not a willing seller of his property, and he is forced to yield his title and surrender his estate in the interest of the general public, not infrequently to his great and irreparable inconvenience, if not actual loss."

**▐█▌** It is the well-settled rule of law in this state that if the verdict appears to be so excessive as to indicate passion and prejudice in ordinary negligence cases, the verdict should be set aside. The same rule applies to condemnation proceedings. It is, of course, not the province of this court to measure the damages, but it is our conclusion from the record in this case that an award of $6,000 for less than 10 acres of unimproved land condemned in this action is grossly excessive and can only be accounted for as being the result of passion and prejudice. We are, therefore, constrained to hold that the judgment entered in the lower court was excessive and the motion for a new trial should have been sustained.

Appellant also urges other errors for a reversal. In view, however, of the necessity for a retrial, a consideration of other questions raised is deemed unnecessary.

For the reasons hereinabove expressed, the judgment of the lower court is hereby reversed.—Reversed.

HAMILTON, C. J., and ANDERSON, DONEGAN, and RICHARDS, JJ., concur.

MITCHELL, J., dissents.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority opinion and therefore respectfully dissent.

The opinion says:

"Much of the damage to plaintiffs' original farm had already been caused by the separation of the land in the north portion by the railroad right of way through the land long prior to the time of these condemnation proceedings. It is, therefore, clear that the damage to plaintiffs' farm by the construction of the highway is not as great as it would have been had the farm been in one entire tract at the time of the condemnation for the highway."

With this statement I cannot agree.

In looking at the plat set out, one finds that the projection of Highway 88 thru the farm served to divide most of the fields which had theretofore been capable of being farmed without the inconvenience of point rows. It was not the railroad but the highway that divided the land into these small, separate pieces. To get a fair idea of the damage one need but look at the plat to see the manner in which the highway divided the land. The majority opinion emphasizes the fact that there were only 9.63 acres of unimproved land taken for highway purposes. I quote:

"It is our conclusion, however, that a verdict of $6,000 for the unimproved 9.63 acres, under the record in this case, is grossly excessive and should be reduced."

The number of acres the highway commission takes, in my judgment, is but one of the elements of damage to be considered. The writer has had some experience in farming and knows, as everyone must know, that when you divide a tract of land into small parts the problem of farming becomes a great deal more difficult and more expensive. The hazard of crossing a paved highway in conducting farming operations is well known, and this court can take judicial notice of the fact that there will be much traffic, at a high rate of speed, along this highway.

The appellees introduced six witnesses, men familiar with land values and with the farm involved in this action. Appellant introduced five witnesses.

From appellants' brief I quote the following two statements:

"The average difference in value taken from the testimony of all of the plaintiffs' witnesses, amounts to $10,276.66."

"The average difference in value, or damage to the plaintiffs' farm as testified to by the defendant's witnesses, was $3,485.80."

An examination of the evidence of these various witnesses shows that they did not exactly agree in regard to the value of the farm before the building of the highway and after its construction. This is but natural. After all, these witnesses are testifying to their own opinions. Plaintiffs introduced witnesses who testified that the land before the construction of the highway was worth $110 per acre, some $105, some $100; that after the construction of the highway the land was worth $60 and $65 an acre. Some of the defendant's witnesses testified that the land before the construction was worth $100 per acre and one placed it as low as $75. Some of the defendant's witnesses testified that after the construction of the highway the land was worth $88 per acre and some placed it as low as $60. One of defendant's witnesses testified that the damage was $3,756, another that it was $2,700. So we find there was evidence before the jury, evidence of defendant's own witnesses, upon which the jury could have found the land was worth $100 per acre before the construction of the highway and only $60 per acre afterwards, or a total damage in excess of the amount allowed. Therefore, it seems to me that the record in this case shows the verdict arrived at by the jury, instead of being the result of passion and prejudice, was the result of careful and mature deliberation, based upon competent evidence.

The opinion cites three cases. Let us turn to them.

The first is that of Jenkins v. State Highway Commission, 208 Iowa 620, 224 N. W. 66. In that case the highway crossed the land. It did not destroy any buildings and apparently did not divide the farm into small pieces. Not quite 14 acres were used. The jury returned a verdict of $20,000, which is on a basis of a little more than $1,400 an acre; in other words, more than twice the amount allowed in the case at bar. In the Jenkins case there was no showing of any damage other than the direct crossing of the farm by the highway. It is quite different

686

to say that an allowance of $1,400 per acre is excessive than that $600 an acre is excessive in the case at bar, where the highway cut the land into various parts.

Parrott v. Chicago Railway Company, 127 Iowa 419, 103 N. W. 352, was a case in which the railroad company was widening the right of way. It was not a new crossing of the land but simply the taking of a small fraction of an acre. This court did not reverse the case but rather reduced the amount.

In the case of Youtzy v. City of Cedar Rapids, 150 Iowa 53, at page 57, 129 N. W. 351, 352, Justice Weaver wrote the opinion, saying:

"The amount allowed the plaintiff would seem to be liberal, but, in view of all the evidence, it is not so large as to clearly indicate a verdict influenced by passion and prejudice," and affirmed the decision of the lower court.

I think the rule which has been adopted by this court, of reversing the case where the verdict is clearly excessive, is a good one. Under our procedure in cases of this kind we leave it to the jury to fix the amount of the damage, and this court should not interfere with the jury's verdict unless it is clearly shown that it is excessive and is based upon passion and prejudice. In the case at bar no such record confronts us, as I read it, and I would affirm the verdict.