IN RE ESTATE OF BUFORD MURRAY.

ISABELLE M. PARSONS, Appellant, v. FIRST NATIONAL BANK OF FAIRFIELD, Administrator, Appellee.

No. 46975.

FEBRUARY 11, 1947.

Ralph H. Munro, of Fairfield, for appellant.

Booker Smith and Thoma & Thoma, all of Fairfield, for appellee.

GARFIELD, J.—On May 1, 1945, about six a.m., Buford Murray shot himself through the forehead with a .22-caliber rifle in the dining room of Harry Parsons' farm home, where he had been a guest since the evening of April 29th. Parsons, seventy-one, his wife, sixty-four, and their unmarried daughter Isabelle, twenty-five, were at home at the time but did not witness the shooting. Murray died about an hour later, soon after he was taken to a hospital in Fairfield.

Mr. and Mrs. Parsons and Isabelle each filed claim in probate against the administrator of Murray's estate for $5,000 for "nervous shock and personal injuries sustained because of the willful act of Murray in committing suicide in the Parsons home." See, as bearing on the claims filed, Blakeley v. Estate of Shortal, 236 Iowa 787, 20 N. W. 2d 28. The claims of Mr. and Mrs. Parsons were later assigned to Isabelle and the three claims consolidated for trial. The jury returned a lump-sum verdict of $4,000 on the three claims. On motion of the ad-

ministrator the court set aside the verdict and granted a new trial. Claimant has appealed.

██ The motion for new trial contains eleven grounds. Apparently pursuant to Rule 118, Rules of Civil Procedure, the court sustained certain grounds. Those which were sustained allege (1) the verdict is not sustained by the evidence and (2) is so excessive as to show passion and prejudice and (3) misconduct of the jury in considering matters not in evidence— that decedent had no close relatives and had on his person a large amount of cash or bonds when he committed suicide. The above grounds substantially conform to some of the causes for new trial enumerated in Rule 244, Rules of Civil Procedure, which superseded section 11550, Code, 1939.

It is plain the court felt the award was excessive and there was misconduct of the jury calculated to and which did affect the verdict. The court also said in its ruling it should have required the jury to fix the amount of damages on each of the three claims even though no request was made therefor. However, the grounds of the motion which allege the court's failure in this regard were not sustained—whether from mistake or otherwise does not appear. The court also expressed the opinion, since it had knowledge decedent left no direct heirs and had a very substantial estate, it should have given some cautionary instructions. This, however, was not one of the grounds of the motion for new trial.

We are inclined to affirm the court's ruling. The trial court has a wide discretion in the matter of granting a new trial upon such grounds as are here involved. We interfere reluctantly and infrequently with the exercise of such discretion, especially where a new trial is granted rather than denied. Only a clear showing of abuse of discretion will justify such interference. Cases where the trial court erroneously determines a question of law in granting a new trial obviously differ from the one now before us. Such cases present primarily the law question involved rather than the exercise of discretion. Kessel v. Hunt, 215 Iowa 117, 123, 244 N. W. 714.

██ Of course, it is true, as appellant argues, the assessment of unliquidated damages is peculiarly within the discretion of the jury. But that discretion is not unlimited, although courts

*usually* will not interfere unless the verdict is so large or so small as to shock the conscience. Remer v. Takin Bros. Freight Lines, 230 Iowa 290, 294, 297 N. W. 297, 298, and cases cited. In the Remer case, upon which appellant relies, defendant appealed after two verdicts had been returned in plaintiff's favor in substantially the same amounts and each verdict had been approved by a different trial judge. Obviously, the case is not applicable here.

While we have frequently said a verdict should be set aside which is so large or so small as to shock the conscience, it appears from many of our decisions this is not the sole test. A trial court should grant a new trial where it appears the verdict does not effectuate substantial justice or the jury, from any cause, has failed to respond truly to the real merits of the controversy.

The above views are fully discussed and numerous authorities in support thereof are cited in In re Estate of Hollis, 235 Iowa 753, 16 N. W. 2d 599; In re Estate of Goretska, 234 Iowa 1080, 13 N. W. 2d 432. See, also, 39 Am. Jur. 199, 200, sections 201, 202.

Aside from the grounds for new trial prescribed by Rule, the trial court has inherent power, on its own motion, after reasonable notice to the parties and opportunity to be heard, to set aside a verdict and grant a new trial where a party has not received a fair and impartial trial. See cases cited last above; also, Brunssen v. Parker, 227 Iowa 1364, 291 N. W. 535, and cases cited; 39 Am. Jur. 37, section 9. It has been said, however, this power should be exercised with great caution and in aggravated cases only. Hensley v. Davidson Bros. Co., 135 Iowa 106, 110, 112 N. W. 227, 14 Ann. Cas. 62; 39 Am. Jur. 38, section 10.

We will briefly discuss the evidence which bears on the measure of damages. Claimants and decedent were friends of long standing. Decedent had been a frequent visitor in claimants' farm home. Mr. Parsons was at the barn, Mrs. Parsons and Isabelle were upstairs in bed when decedent shot himself. Mrs. Parsons heard the body crash to the floor but apparently did not hear the rifle shot. Isabelle "jumped out of bed and

hollered 'what is the matter * * *.' '' Mrs. Parsons dressed partially, went downstairs and saw Murray lying in a pool of blood, unconscious and moaning. She dashed outdoors, called her husband, who hurried to the house, and both returned to the dining room where decedent lay.

The daughter came downstairs, witnessed the scene, and then ''rushed in the other room.'' Mrs. Parsons telephoned for the family doctor and the sheriff. The doctor arrived in about fifteen minutes; the sheriff and his deputy, perhaps a half hour later. The doctor estimates the pool of blood around decedent's head as about three feet in diameter. The deputy sheriff says, ''It was a small wound. A .22 rifle would retain most of the blood in the body. It was just trickling out. * * * It wouldn't bleed over a pint, I don't think. There was a small pool of blood about a foot across.'' Mr. Parsons testifies, however, ''Lots of blood coming out, oh it just run, and it was all over the room there.''

Decedent was removed in an ambulance, apparently under the direction of the doctor and sheriff, from the Parsons home to a hospital in Fairfield five miles distant. None of the claimants accompanied the dying man on this trip. A few minutes after arrival at the hospital Murray died.

None of the claimants suffered any physical injury in the ordinary sense. There is no evidence of damage from loss of time, medical or hospital attention, or the like. Such damage as claimants suffered resulted from the shock of seeing or hearing what transpired.

Mr. Parsons says:

''I have seen blood, that is nature, that didn't bother me, that part of it. The effect of seeing Murray lying in the dining room was, well, not very good. You wouldn't like anything like that yourself. * * * Q. * * * what actual injury did it do to you? A. Why, I just couldn't tell you that. * * * After they took the body out of the house, well, I went back and finished my chores * * * Oh, yes, it did affect my nerves to a certain extent, and I couldn't sleep as good for it at all.''

Mrs. Parsons testifies:

"Q. Tell us exactly what you can't do now that you could do before Mr. Murray's death? A. I can't compose myself, which is physical. I am not—I am physically and mentally not like I used to be. Well, I can't do what I used to do in any form. I can do easy work, but I haven't got the ability nor I can't—I can't express myself as I did—it just seems to me that I have just lost something, and I wish somebody would tell me what it is."

Principal emphasis at the trial was upon damage claimed to have resulted to Isabelle. She was not present at the trial nor did she testify by deposition. She was then visiting her brother's wife in Chicago and helping care for a newly born niece. The family doctor says:

"I don't think the daughter's condition now would be fit for her to be on the witness stand. I think it would affect her general health." (Nine months elapsed between the shooting and the trial.)

Isabelle had suffered from nervous trouble since about five years before the occurrence in question. It was then necessary for her to discontinue college and after that she had no employment. She had been examined at Iowa City and Kirksville, Missouri, but could not learn what caused her nervous condition. The father and mother testify in substance that the experience here involved intensified her trouble: "She was afraid to sleep in the room by herself or put the car in the shed."

The family doctor says:

"I don't see any difference as to Harry [Parsons] since that time. His wife seems more nervous * * * Well, I would say they [Mrs. Parsons and Isabelle] are more nervous or unstable. I don't know of anything that caused it except the suicide in the house. * * * I think Mrs. Parsons was in about twice since Mr. Murray's death. The rate of treatments I have given these women both before and after Mr. Murray's death has been practically the same. * * * These tonics I gave Mrs. Parsons and the girl were the same kind I gave them before the death of Mr. Murray. Whatever treatments I gave, I continued to give the same treatment."

The deputy sheriff testifies:

"I thought they were very sensible that day. She [Mrs. Parsons] was very nice. * * * I did not notice him [Mr. Parsons] using loud language, or shaking or quivering or anything like that. No, he was very sensible about the thing. * * * Well, when we went back we remarked that we thought they were very sensible people, that that happened and they contained themselves in that manner, was all."

While, of course, there is other testimony, the above fairly reflects the evidence on the question of damages. In view of the opportunity the trial court had to appraise the matter, we are not prepared to hold it was an abuse of discretion for it to conclude the award of $4,000 was so excessive, especially when taken in connection with the matter of misconduct of the jury, that a new trial was warranted.

When the motion for new trial was submitted three of the jurors were examined under oath in support of the administrator's claim of misconduct of the jury. Each testified in substance that during the deliberation of the jury she heard a juror say deceased had a large amount of bonds on his person at the time he died. One juror said this statement was made by their foreman. Two jurors testified they heard another juror say during their deliberation that decedent had no direct heirs. These two also gave it as their opinion the statements regarding the bonds and absence of direct heirs materially affected the verdict. The third juror examined, who testified to the statement about the bonds, said she did not know the statement especially affected the verdict.

The testimony of these three jurors stands undisputed. Claimant made no effort to controvert it. The claim of misconduct of the jury is also supported by affidavit of one of the administrator's attorneys attached to the motion for new trial. The affidavit is based on statements said to have been made to the attorney by the three jurors who were examined and another juror. The trial court found and the record indicates the jurors who were examined were reticent and not entirely frank —one juror protested against at least part of the examination.

The court was of the opinion the statements shown to have been made in the jury room were calculated to and did influence the verdict.

Upon the trial there was no testimony decedent had any bonds at any time or that bears in any way upon his financial condition. Under the issues any such evidence would plainly have been inadmissible. There is perhaps some inferential support for the statement decedent had no direct heirs in the testimony of Mrs. Parsons that she knew of no other home Murray had after his mother died and no other member of his family: "I understand he was the only child * * *." Of course, the question whether decedent had direct heirs was not in issue and testimony that he had none would have been inadmissible.

Claimant contends here, as in the trial court, the statements said to have been made in the jury room are matters that inhere in the verdict, which cannot be impeached in such manner. We think, however, the court had a right to consider the jurors' testimony of the statements made in the jury room about the bonds and the absence of direct heirs. Rules 116, 244, 245, Rules of Civil Procedure, provide that a claim of misconduct of the jury may be sustained and controverted "by affidavit or in any other form to which the parties agree or the court directs." The court was therefore authorized to consider the affidavit of the administrator's attorney and to hear testimony of jurors on the claim of misconduct. Rules 116, 244, and 245, so far as applicable here, introduce nothing new but are substantially the same as sections 11231, 11550, and 11551, Code, 1939, which they supersede. Iowa decisions have long recognized the procedure followed in the trial court. Skinner v. Cron, 206 Iowa 338, 343, 220 N. W. 341; State v. Mutch, 218 Iowa 1176, 1181, 255 N. W. 643; Keller v. Dodds, 224 Iowa 935, 940–942, 277 N. W. 467, and cases cited. See, also, 46 C. J. 362, 363, section 385. Apparently in many or perhaps most jurisdictions misconduct of jurors may not thus be shown. 39 Am. Jur. 196, 197, section 198; 46 C. J. 354, section 374.

The statements shown to have been made here were not inflammatory and perhaps not as highly prejudicial as those in some of our cases. See, for example, Farmers Sav. Bk. v. Smith, 212 Iowa 529, 234 N. W. 798. However, we are not

prepared to hold it was a clear abuse of discretion for the trial court to conclude the statements constituted prejudicial misconduct on the part of the juror who made them. The portion of the testimony of the jurors to the effect such statements materially affected the verdict is to be disregarded. That is a mere matter of opinion which does inhere in the verdict. Keller v. Dodds, supra, and cases cited; State v. Siegel, 221 Iowa 429, 432, 264 N. W. 613; Griffin & Adams v. Harriman, 74 Iowa 436, 439, 38 N. W. 139.

But it was proper to show what did transpire in the jury room. That is a fact and not an opinion. Douglass v. Agne, 125 Iowa 67, 72, 99 N. W. 550, and cases cited. It is sufficient cause for the new trial that the statements were made and constitute misconduct which was calculated to, and it is reasonably probable did, influence the verdict. State v. Kirk, 168 Iowa 244, 257, 150 N. W. 91; Keller v. Dodds, supra.

■ We have frequently held it is not competent to show by affidavit or testimony of jurors what influenced the verdict because, as stated, that is a matter of opinion which inheres in the verdict itself. Accordingly, it may not be shown in such manner, to avoid the verdict, that a juror did not assent to it, that he misunderstood the court's instructions or the testimony of witnesses, that he was mistaken in his calculations or judgment or was unduly influenced by the statements of fellow jurors, or other matters resting alone in the breast of the juror. Gregory v. Kirkman Consol. Ind. Sch. Dist., 193 Iowa 579, 582, 187 N. W. 553; Migliaccio v. Smith Fuel Co., 151 Iowa 705, 709, 710, 130 N. W. 720; State v. Dudley, 147 Iowa 645, 653, 126 N. W. 812, and cases cited.

But these decisions are not applicable here. Litigants are entitled to have the facts determined upon the record made in open court. And a juror has no right to state, during the deliberation of the jury, apparently from personal knowledge, matters of fact prejudicial to the rights of a litigant which it is reasonably probable influence the verdict. Under our decisions the making of such statements is not a matter that inheres in the verdict which may not be shown by affidavit or examination of the jurors. See in addition to cases heretofore cited: City

Nat. Bk. v. Steele, 220 Iowa 736, 263 N. W. 233; Skinner v. Cron, supra, 206 Iowa 338, 343, 344, 220 N. W. 341; State v. Salmer, 181 Iowa 280, 287, 164 N. W. 620; Cresswell v. Wainwright, 154 Iowa 167, 186, 134 N. W. 594; Wilberding v. City of Dubuque, 111 Iowa 484, 486, 487, 82 N. W. 957; Kruidenier Bros. v. Shields, 70 Iowa 428, 30 N. W. 681.

Some of our decisions recognize the rule that a new trial should not be granted, even though misconduct of the jury is shown, where the verdict effectuates justice. State v. Wegener, 180 Iowa 102, 110, 162 N. W. 1040; Hathaway v. Burlington, C. R. & N. Ry. Co., 97 Iowa 747, 66 N. W. 892. This rule is not applicable here. It is clear the trial court felt the verdict did not effectuate justice. We are not prepared to hold it was an abuse of discretion to reach such conclusion.

While it is unnecessary to consider the trial court's failure to require the jury to fix the amount of damages on each of the three claims and its failure to give any cautionary instruction, we may observe that its conclusions on the above matters, as hereinbefore stated, afford some added support for the order for new trial. On a consideration of the whole record the order is—Affirmed.

WENNERSTRUM, C. J., and OLIVER, HALE, BLISS, SMITH, MULRONEY, and HAYS, JJ., concur.

MANTZ, J., concurs in result.