Ruby B. Hall, appellant, v. City of West Des Moines, appellee.

No. 48456.

(Reported in 62 N.W.2d 734)

460

FEBRUARY 9, 1954.

Herrick & Langdon, of Des Moines, for appellant.

Edward J. Kelly and Fountain, Bridges, Lundy & Stephenson, all of Des Moines, for appellee.

THOMPSON, J.—The defendant, City of West Des Moines, a municipal corporation, brought proceedings to condemn the east 400 feet of Lot 2, Bray Farm, in Polk County, a tract containing 14.91 acres, for water-supply purposes. The sheriff's jury having awarded plaintiff, the owner of the realty in question, the sum of $8200.05, or $550 per acre, plaintiff appealed to the district court. Upon trial a verdict was returned for plaintiff in the sum of $30,000. Defendant filed its motion for new trial, specifying fifteen grounds. The Polk County District Court granted the motion on grounds Nos. 1 and 15 and denied Nos. 2 to 14, inclusive. From the ruling on the motion plaintiff has appealed.

I. We set out herewith the first ground of the motion for new trial, which the court sustained:

"1. On the ground that the verdict rendered by the jury in said cause in the sum of $30,000 is so excessive as to indicate passion and prejudice. That the undisputed evidence submitted in said cause was that the City of West Des Moines condemned the East 400 feet of Lot 2, Bray Farm, which amounted to 14.91 acres; that all of Lot 2, Bray Farm, which amounted to 95.5 acres, as well as the portion condemned, was used as unimproved agricultural land at the time of said condemnation; that said award of $30,000 in effect amounts to an award of more than $2000 per acre for the 14.91 acres taken, that said verdict is grossly excessive and can only be accounted for as being the result of passion and prejudice."

It will be observed this ground of the motion is based upon the thought the verdict was so excessive as to show passion and prejudice on the part of the jury. The defendant cites and relies upon Luthi v. State Highway Commission, 224 Iowa 678, 276 N.W. 586; Campbell v. State Highway Commission, 222 Iowa 544, 269 N.W. 20; Jenkins v. State Highway Commission, 208 Iowa 620, 224 N.W. 66; and Schoonover v. Fleming, 239 Iowa 539, 32 N.W.2d 99. In the latter case, we held the verdict was not so excessive as to show passion and prejudice; in the first three, that it was. Comparison of verdicts in condemnation cases for the purpose of demonstrating passion and prejudice or the lack thereof is of little or no value, since the facts and conditions vary widely. As was said in Schoonover v. Fleming, supra, page 544 of 239 Iowa, page 102 of 32 N.W.2d: "* * * it is difficult, if not impossible, to have two cases of condemnation in which the elements of damage or the conditions are identical."

The trial court was of the opinion the amount of the verdict here was so excessive as to show passion and prejudice. While we might be inclined to disagree with this holding, we do not find it necessary to determine the question. We agree the court was within its proper discretion in sustaining the fifteenth ground of the motion, and the point involved in the first ground is not likely to arise upon another trial.

II. We quote here ground 15 of the motion for new trial: "15. On the ground of a careful study of the entire record in this cause it must be said that the amount awarded by the jury

is so excessive that a just, reasonable, and intelligent mind is forced to conclude that the jury failed to comprehend the facts and instructions submitted by the court, and that therefore the defendant was denied a fair and impartial trial of the issues in this cause."

It is evident here the court was exercising its inherent right to grant a new trial because it thought the jury had not truly responded to the issues involved as submitted to it. The only question for this court to determine is whether the trial court was within its just and proper discretion in granting a new trial, or whether it had abused it. It is not for us to say whether we would have seen the matter in the same light. Unless we are persuaded the lower court went beyond its fair discretion, we must affirm. In Whiting v. Cochran, 241 Iowa 590, 592, 41 N.W.2d 666, 667, we said: "A new trial should be granted when the trial court is of the opinion that the verdict fails to administer substantial justice or whenever it appears that the jury has failed to respond truly to the real merits of the controversy." In Burke v. Reiter, 241 Iowa 807, 813, 42 N.W.2d 907, 910, is this language: "Nevertheless, the existence of the power [to grant new trials when it appears justice has not been done] is undoubted. Our court has always recognized it."

How far the court may go in granting a new trial for these reasons has been much disputed. We think there was in the instant case a jury question upon the amount of plaintiff's damage. But this is not to say the trial court abused its discretion. In Brunssen v. Parker, 227 Iowa 1364, 1365, 291 N.W. 535, 536, after stating the evidence was in serious conflict, this court held: "The order also' stated that under the entire record the court could not give its approval to the verdict and believed that in furtherance of justice the cause should be retried. If a party has not received a fair and impartial trial, the trial court has inherent power to set aside the verdict."

The question has received much attention in cases before this court. Most of the authorities are collected in Burke v. Reiter, Brunssen v. Parker, Whiting v. Cochran, all supra; in both the majority and dissenting opinions in In re Estate of Goretska, 234 Iowa 1080, 13 N.W.2d 432; and In re Estate of

Murray, 238 Iowa 112, 26 N.W.2d 58. It would serve no useful purpose to cite and analyze them again.

 Whether the trial court has the power to order a new trial unless it can point to something in the record supporting its view a fair trial was not had we need not decide. This seems to have been the dividing line between the majority and minority in the Goretska case, supra. We think sufficient appears in the case at bar to justify the exercise of the court's discretion in favor of another trial. It is not necessary that there be reversible error; if such were the rule, the inherent power of the court to correct a failure of justice would be meaningless. Nor can we agree with plaintiff's counsel a new trial should not be granted because it would mean only submission of substantially the same evidence to another jury. We cannot say the evidence will be the same; and if we could, we cannot say the second jury will be swayed by what the trial court considered the same improper considerations or will fail to respond truly to the case before it. To hold with this contention would be again to nullify the right and duty of the court to grant new trials in these situations:

We turn then to the record to determine whether there is anything shown which supports the court's holding that "the jury failed to comprehend the facts and instructions submitted by the court." It is evident the court thought the amount of the verdict was in itself so excessive as to indicate the jury had not responded truly to the issues. We are not at this point concerned with whether the amount was so excessive as to indicate passion and prejudice. We may, arguendo, concede it was not; and yet it might be so large the court would be warranted in finding the jury had failed to understand the case submitted to it.

 Three experts on values testified for each party. Each was examined and cross-examined at length. It would aid little and would unduly lengthen this opinion to go into the details of this testimony. For plaintiff the witness Gray placed the value of the entire tract, Lot 2, Bray Farm (containing in all 95.50 acres), from which the condemned part of 14.91 acres was taken, as $1815 per acre. Mr. Gray was engaged in the sand and gravel business, and he then said that to his company, or to him, the remainder after the taking of the tract for water-supply purposes

would have no value, because of the threat of litigation over contamination of the water supply. The basis for the award of damages in these cases is the difference between the reasonable market value of the entire tract immediately before the condemnation, and of the remaining portion after the taking. Nedrow v. Michigan-Wisconsin Pipe Line Co., 245 Iowa 763, 61 N.W.2d 687, 690. Use or suitability of the property for one purpose only may be shown to disclose its nature and condition; but ordinarily it should not be made the sole criterion of value. Nedrow v. Michigan-Wisconsin Pipe Line Co., supra, page 769 of 245 Iowa, page 691 of 61 N.W.2d.

The witness Rehmann placed the value of the entire tract before the taking of the 14.91 acres at $143,250, and after at $56,350. Witness Zirbel valued the entire Lot 2 at $152,800 and the remainder after the condemnation at $60,442.50.

Defendant's witness Ferguson valued Lot 2 before the taking at $23,875, and after at $19,375. Holden, for defendant, placed a value of $19,000 before the condemnation and $14,500 after. Donahoe, defendant's third witness, valued the tract at $35,812.50 before and $28,730.25 after. Even to those accustomed to the wide variances in opinions of expert witnesses, the differences here must come as a considerable surprise. Gray placed plaintiff's damage at approximately $190,000; Rehmann, at $86,900; and Zirbel at $92,357.50. But the figures shrunk, by comparison at least, almost to the vanishing point when defendant's experts took the stand. Ferguson and Holden each made the damage to plaintiff $4500; and Donahoe, $7082.25. How men who are presumed to have special skills and knowledge in matters of property valuations can differ so widely passes nonexpert understanding. Apparently each approached the matter from a different viewpoint, like the blind men who studied the elephant; but it seems there should be some common basis even for experts in making their valuations.

Lot 2, Bray Farm, is unimproved farm land. The surface is good black dirt, underlaid by water-bearing gravel. It is within the city limits of West Des Moines, and has been since 1948 restricted to agricultural and mining uses by zoning ordinances of the city. It is bounded on the east by the plant of the Penn-

Dixie Cement Company; on the southeast by the Chicago, Rock Island & Pacific Railroad; on the south by Jordan Creek; on the west and northwest by acreage tracts; and on the north by land belonging to the Penn-Dixie Company and used by it in connection with its plant to the east. To the northwest some hundreds of feet is a plant of the Perlite Company. Across the railroad tracks to the southeast and south are some hundreds of acres of land owned by the Concrete Materials Company, which is described in the record as the largest producer of sand and gravel in Iowa. It uses its property for producing these materials, by stripping or mining.

This is the property on which experts differed so widely. It is apparent the trial court felt the testimony of plaintiff's witnesses was far out of line with reality, since he thought the jury's verdict of $30,000 was excessive. Of course, it is for the jury to decide when experts disagree; but the trial court has the right to scan the course of the trial and the verdict returned; and if for any reason which may be supported by the record he thinks justice has not been done, he has the unquestioned right to order a new trial, even though such reason may not in itself amount to reversible error.

The true rule for measuring plaintiff's loss in cases such as this was given by the court in its instruction No. 5. The jury was there told it must first find the market value of Lot 2, Bray Farm, as a whole immediately before the condemnation; then it must determine the value of the portion remaining immediately after the condemnation; and the difference would be the amount to be allowed to plaintiff for her damages. Three jurors made uncontroverted affidavits that this method was not followed. They deposed that statements were made by various jurors that they should put plaintiff's recovery at a high figure, because if it should be too much the court could cut it down, while if it was placed too low it could not be raised. There were also statements the City of West Des Moines would make a considerable profit from the use of the property in the sale of water in the next fifty years. At no time was any effort made to determine the value before or after the taking; the only discussion was as to how

much money should be allowed plaintiff. It is the duty of the jury to follow the instructions of the court. It was said in State v. Kirk, 168 Iowa 244, 262, 150 N.W. 91, 96:

"They are expected to follow with scrupulous fidelity the instructions as given by the court. This is essential, not only in order that there may be a uniform and consistent interpretation and application of the rules of law, but also that these be made certain to the end that the rights and duties of litigants be protected and enforced in the courts of justice."

It appeared in this case the jurors had obtained a copy of the Code of Iowa and had attempted to ascertain from it what punishment might be given the defendant if convicted, and whether the court might lessen the penalty prescribed by the Code upon a recommendation of leniency from them. This court said there would have been no prejudice if the information obtained had been accurate; but in attempting to interpret the law the jurors evidently misunderstood it. We said, page 260 of 168 Iowa: "* * * in usurping the court's authority to construe the law they * * * obtained an erroneous conception of the punishment to be administered and it cannot fairly be said that they likely were not somewhat influenced thereby."

In the case at bar, according to the undenied affidavits, the jury undertook to construe the law to be that the trial court might reduce the amount if it were too large, but could not increase it if it were insufficient; and on this consideration the instructions of the court as to fixing values were ignored. The case is in this respect much like State v. Kirk, supra.

Yet it is not necessary, as we have pointed out, that the jury's action here be in itself reversible error. The line between those matters occurring in the jury room which inhere in the verdict, and those which constitute improper conduct of the jury so that a setting aside of the verdict is required is often a fine one and difficult to draw. Our question is whether the jury's conduct as shown by the affidavits was such as to support the conclusion of the trial court that justice was not done and the jury had failed to comprehend the instructions of the court and to respond truly to the issues submitted. We think the matters

shown by the affidavits justified the action of the trial court in granting a new trial, at least to the extent we cannot say it abused its fair discretion in so doing. As we said in In re Estate of Murray, supra, page 121 of 238 Iowa, page 63 of 26 N.W.2d: "It is clear the trial court felt the verdict did not effectuate justice. We are not prepared to hold it was an abuse of discretion to reach such conclusion."

■ III. Defendant-appellee contends the court was in error in overruling grounds of its motion for new trial other than Nos. 1 and 15, which it granted; and that it has the right to raise these questions in support of the record. Thus, defendant says, if error had been committed in sustaining the specific grounds of the motion, but there were other grounds not sustained which should have been granted, we may consider them and affirm the trial court. This is sound law. Pappas v. Evans, 242 Iowa 804, 810, 48 N.W.2d 298, 302; Shaw v. Addison, 236 Iowa 720, 733, 734, 18 N.W.2d 796, 803, 804, and cases cited.

But we have held the court did not err in granting a new trial on ground No. 15 of the motion. Accordingly we need not consider the contentions made by defendant in regard to the grounds overruled by the district court. There are, however, three points made by the defendant in this connection which are likely to arise upon retrial, and so should have our attention now.

■ IV. It is strongly urged by the defendant the court was in error in permitting plaintiff's witnesses to testify to the value of the land for industrial purposes, and in submitting the value for industrial uses to the jury. It is urged it is availability for use rather than adaptability which must be considered in fixing values, and the zoning ordinance in effect since 1948 makes this property unavailable for industrial purposes. Long Beach High School Dist. v. Stewart, 30 Cal.2d 763, 185 P.2d 585, 173 A. L. R. 249, 265, 266, is chiefly relied upon by defendant here. The case holds the jury was properly instructed to limit its consideration of values to the use to which it might be put under existing zoning ordinances. But the California Supreme Court cited with approval City of Beverly Hills v. Anger, 110 Cal. App. 626, 294 P. 476, where it was held that if there is plausible evidence indicating a prospective use for purposes other than that to

which the realty is restricted, the jury might consider such possible use as an element of value if the city council should modify the ordinance. In the Long Beach case the majority thought there was no evidence indicating any prospective change in the ordinance. But it approved the doctrine of the Beverly Hills case when there is evidence of changes in conditions which might reasonably bring about a change in the zoning restrictions to permit other uses. In the case at bar there is evidence of some industrial growth near the land in question. The Penn-Dixie plant adjoining on the east is a large one, although it was there when the zoning ordinance was enacted. The extensive operations of the Concrete Materials Company have commenced in recent years. The Rock Island railroad tracks run along the southeast side of the tract, and the plant of the Perlite Company is not far away. There is evidence sufficient to permit the jury to find the territory is becoming an industrial development to some extent at least. We think the question of adaptability for industrial uses with possible revision of the zoning ordinances as an element of value to be taken into consideration was a proper one to be submitted as the trial court did.

 V. The defendant attempted to introduce evidence concerning the price paid by plaintiff for the entire tract of 210 acres of which Lot 2, Bray Farm, is a part, in 1944. The court denied admission, and defendant thinks there was error at this point. It was raised as ground No. 6 of the motion for new trial. The rule is laid down in 18 Am. Jur., Eminent Domain, section 351, page 994, thus: "When a parcel of land is taken by eminent domain, it is competent, as evidence of its market value, to show the price at which it was bought, if the sale was a voluntary one, and not so remote in time as to have no bearing upon the question of present value."

In Hayes v. Chicago, Rock Island & Pacific Ry. Co., 239 Iowa 149, 154, 30 N.W.2d 743, 746, we said the question of whether the original purchase was too remote is largely in the trial court's discretion. 29 C. J. S., Eminent Domain, section 273, page 1267. In Nedrow v. Michigan-Wisconsin Pipe Line Co., supra, page 773 of 245 Iowa, page 693 of 61 N.W.2d, evidence of the price paid by plaintiff in 1942 for 160 acres of the

200 acres involved, and for the remaining 40 in 1945, was received and considered, apparently without objection, on the trial in 1950. While we might have been better satisfied if the court had admitted the evidence, since the intervening period was one of eight years only, we do not think the court abused its discretion in excluding it.

 VI. Finally defendant by its motion for new trial raised the question of admissibility of evidence of suitability and value of Lot 2 for production of sand and gravel. It contends there was no competent evidence. We think there was. It appears the Concrete Materials Company is conducting extensive sand and gravel-producing operations just across the railroad tracks. There is also substantial evidence the ground is underlaid by sand and gravel, and of test holes being made. In fact, at least one of defendant's experts took into consideration both the potential industrial and sand and gravel uses. The witness Donahoe said:

"In making my estimate I considered the damage to the entire tract in taking the 14.91 acres. I considered the location of the portion taken. It was not only an agricultural unit, but also an industrial potential and considering the possibility of sand and gravel and good water supply."

See Nedrow v. Michigan-Wisconsin Pipe Line Co., supra; Ranck v. City of Cedar Rapids, 134 Iowa 563, 565, 566, 111 N.W. 1027, 1028.

 VII. We have often said we interfere reluctantly with the grant of a new trial by the trial court. Brooks v. Brotherhood of American Yeomen, 115 Iowa 588, 88 N.W. 1089. It is also settled beyond possibility of dispute that the discretion of the trial court to order a new trial in the interest of justice is greater than that of the appellate court, and that only a clear showing of abuse of discretion will justify our interference when a new trial has been granted on this ground. In re Iowa-Illinois Gas & Electric Co., 242 Iowa 534, 536, 537, 47 N.W.2d 162, 163, and cases cited. Here the court, having heard the testimony and being familiar with the various developments of the trial, including the affidavits of the jurors, was convinced the jury had not

fully understood or fairly acted upon the issues submitted. In Elings v. Ted McGrevey, Inc., 243 Iowa 815, 822, 53 N.W.2d 882, 886, the rule is aptly stated: "The fact that a verdict may shock the conscience is not the sole test for reducing or setting aside a verdict or granting a new trial. A trial court may independently exercise these powers when it is convinced that a verdict does not effect justice or that *a jury has not done its duty*." (Italics supplied.) Citing Dewey v. Chicago & N. W. R. Co., 31 Iowa 373, 377, 378; In re Estate of Hollis, 235 Iowa 753, 760 et seq., 16 N.W.2d 599, 602, 603; and In re Estate of Murray, supra. The case at bar is not one in which we should say the court went beyond its proper discretion.—Affirmed.

BLISS, C. J., and OLIVER, GARFIELD, WENNERSTRUM, SMITH, and HAYS, JJ., concur.

LARSON and MULRONEY, JJ., dissent.

LARSON, J. (dissenting)—The real issue before us here is whether or not the trial court did abuse its discretion by sustaining defendant's motion for a new trial. It must be conceded that there is ordinarily broad discretion vested in the trial court in such matters, and that we will not interfere with that discretion unless it appears from the entire record that there is no sound basis for such ruling. The majority, I believe, do not contend that the discretion is absolute.

It must be remembered that this case involves eminent domain wherein much of the evidence is tendered by experts who, under certain restrictions, give their opinion on the value of the property affected by the condemnation proceedings. It is not a question of observation, memory or veracity of a witness. The opinions as well as the credibility of the witnesses appear in the record and we can review them as well as the trial court. There would seem to be no presumption or inference that the trial court observed something we are unable to observe that should uphold its order for a new trial. Admittedly, the reason need not be one that would amount to reversible error, but I feel that it should be based upon something reasonable and tangible.

Quite clearly the basis of the trial court's ruling here was

upon its opinion that the jury's verdict was too large. In its ruling the court stated: "It has appeared to the court that the allowance in favor of the plaintiff is so grossly excessive as to indicate passion and prejudice." It is equally clear that because of the amount of the award the court concluded that the jury must have misunderstood the facts and the instructions of the court, or did not follow them. This is mere surmise and I can find no substantial facts or circumstances in the record which support that conclusion. We certainly should review them carefully, for if there are none the trial court would abuse its discretion in granting such a new trial. In the quest to see that justice is done, we as well as the trial court need legal justification for the exercise of such a discretion.

We have said many times the fixing of the award is for the jury, and here they have done so. Has the trial court or have we the right now to say that because we think it too generous it should be set aside, especially if there is ample competent evidence in the record to sustain the award? Should the trial court or should we say, in effect, that the witnesses of the plaintiff are not to be believed and that the jury cannot accept these opinions or valuations? The award here was substantially under the values testified to by all of plaintiff's witnesses. To superimpose our opinion over this testimony and the allowance of the jury on the basis of the amount of the award alone seems to me to make light of the jury's function and is not at all sound. I feel that the trial court unjustifiably let its feelings on the amount of the award give rise to implications that are not there, and on those implications the majority would sustain the decision.

It is my feeling that this is the trial court's error, and as I can find nothing substantial except the size of the award upon which the court could base the decision, I believe it abused its discretion in granting a new trial. I would not again subject plaintiff to the expense and inconvenience of defending her property rights.

I would reverse.

MULRONEY, J., joins in this dissent.